# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SHOUT! FACTORY, LLC, <br><br> Defendant. | Case No.: 1:24-cv-06426 <br><br> **JURY TRIAL DEMANDED** <br><br> **Hon. Thomas M. Durkin** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Sam Welbel, Michael Archer, and Dylan Macaluso ("Plaintiffs"), individually and on behalf of all other similarly situated persons, bring this action against Defendant Shout! Factory, LLC ("Shout" or "Defendant") for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Plaintiffs' claims arise from Defendant's practice of knowingly disclosing its consumers' personally identifiable information ("PII") and purchased video media to third parties, including Meta Platforms, Inc. ("Facebook") and Argonautic Labs LLC ("Zigpoll"). Plaintiffs' allegations are made on personal knowledge as to Plaintiffs and Plaintiffs' own acts and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1. This is a consumer privacy class action against Shout! Factory, LLC, for violating the VPPA by knowingly disclosing consumers' video purchases and identities to third parties without consent.

2. The VPPA prohibits "video tape service providers," such as Shout, from "knowingly disclos[ing]" consumers' "personally identifiable information," including "information which identifies a person as having requested or obtained specific video materials

1

or services from a video tape service provider," without express, written consent in a stand-alone form. 18 U.S.C. § 2710.

3. Shout is "engaged in the business … of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," bringing it within the VPPA's definition of "video tape service provider." 18 USC § 2710(a)(4). Specifically, Shout owns and operates a website where consumers can purchase videos in various formats such as DVD and Blu-Ray.

4. A consumer's Facebook ID ("FID") is a unique sequence of numbers linked to an individual's Facebook profile. Any ordinary person can enter "facebook.com/[FID]" into a web browser to quickly locate, access, and view the Facebook profile of that particular consumer.

5. Over the past two years, Shout has systematically collected and shared the personal information of consumers on its website through the use of code that includes cookies and the "Facebook Pixel." Specifically, these website features work together to collect a consumer's personal data, including the FID, name, and/or email address, to track and record a consumer's interaction with Shout's website, and to disclose to Facebook and/or Zigpoll the video(s) purchased and the consumer's identity as a single data point. Put simply, Shout's disclosures allow third parties to know what video media any one of its consumers purchased from Shout's website.

6. This disclosure occurs absent any distinct and separate notice to the consumer, any informed and written consent, or any opportunity for the consumer to withdraw from these disclosures.

7. Thus, without telling its consumers, Shout profits from its unauthorized disclosure of its consumers' PII to Facebook and Zigpoll. It does so at the expense of its digital subscribers' privacy and their statutory rights under the VPPA. *See* 18 U.S.C. § 2710(b)(2)(B).

8. Accordingly, Plaintiffs bring this class action lawsuit for legal and equitable remedies to redress Shout's practices of intentionally disclosing its digital subscribers' PII to Facebook, Zigpoll, and any other unauthorized third parties in knowing violation of the VPPA.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise out of The Video Privacy Protection Act, 18 U.S.C. § 2710.

10. This Court has personal jurisdiction because Shout has sufficient minimum contacts with the forum state of Illinois; Shout has purposefully availed itself of doing business in and purposefully directed its activities at this District and the forum state of Illinois. Namely, by knowingly selling and shipping video materials and memorabilia through its commercial and interactive websites to residents of this District; Shout also holds itself out as selling video materials and memorabilia to this District in Illinois, and nationally.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is a District in which Plaintiff Welbel resides, and because Defendant does business in and is subject to personal jurisdiction in this District. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## PARTIES

12. Plaintiff Sam Welbel is an adult citizen of and is domiciled in the State of Illinois. Welbel is an active Facebook user. During the relevant time period, Welbel used Shout's commercial and interactive website to purchase video materials from Shout while logged into his Facebook account. Shout shipped video materials to Welbel at his home in Illinois.

13. Plaintiff Michael Archer is an adult citizen of and is domiciled in the State of Louisiana. Archer is an active Facebook user. During the relevant time period, Archer used

Shout's commercial and interactive website to purchase video materials from Shout while logged into his Facebook account. Shout shipped video materials to Archer at his home in Louisiana.

14. Plaintiff Dylan Macaluso is an adult citizen of and is domiciled in the State of Ohio. Macaluso is an active Facebook user. During the relevant time period, Macaluso used Shout's commercial and interactive website to purchase video materials from Shout while logged into his Facebook account. Shout shipped video materials to Macaluso at his home in Ohio.

15. Defendant Shout! Factory, LLC is a Delaware corporation with its principal place of business in California. Shout's core business includes the sale and delivery of movies, TV shows, and other video media to its consumers. Shout owns and operates *shoutfactory.com*, which had around 940,000 visitors in 2023, with approximately 85% of them originating from the U.S. Defendant also owns the direct-to-consumer e-commerce site www.ghiblicollection.com. Ghiblicollection.com also had substantial web traffic in 2023, with approximately 41% of them originating from the U.S.[1]

## FACTUAL ALLEGATIONS

A. Background of the Video Privacy Protection Act

16. In 1987, President Ronald Reagan nominated Judge Robert Bork, then a judge for the United States Court of Appeals for the D.C. Circuit, to the Supreme Court of the United States.

17. As the Senate's confirmation hearings were underway, a writer who lived near Judge Bork in Washington D.C.—and knew that Judge Bork's family rented movies at his

---

[1] *See*: SEMRUSH, available at https://www.semrush.com/analytics/overview/?q=shoutfactory.com (Last Accessed: July 3, 2024); *see*: SEMRUSH, available at https://www.semrush.com/analytics/overview/?q=ghiblifactory.com (Last Accessed: October 16, 2024).

neighborhood video store—went to the store and asked for a list of all movies rented by the Borks.

18. The video store provided the writer with a list of 146 movies. In turn, the writer published an article listing the movies rented by Judge Bork.

19. Although the Senate was sharply divided on Judge Bork's prospects as a Supreme Court Justice, there was bipartisan agreement—and outrage—over the video store's disclosure of Judge Bork's movie rental history. Members of Congress expressed a broad desire to protect the right of privacy and intellectual freedom.

20. So, in response to "The Bork Tapes," Congress acted swiftly to pass the VPPA, thereby prohibiting businesses from disclosing consumers' video-watching choices. More specifically, the VPPA protects Personally Identifiable Information that identifies a specific person and ties that person to the videos they requested or obtained.

21. As the VPPA made its way through the legislative process, Senators warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599, at 6-7 (1988).

22. Congress was troubled by disclosures of data that revealed consumers' purchases of goods and services from video providers. As Senators Patrick Leahy and Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes," and that "the trail of information generated by every transaction that is now recorded and stored in sophisticated recordkeeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599, at 7 (1988) (statements of Sens. Simon and Leahy, respectively).

23. As companies began acquiring more customer data, Congress enacted the VPPA to empower individuals "to maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8 (1988).

24. The VPPA prohibits providers of pre-recorded video goods and services from disclosing "Personally Identifiable Information" of their customers absent the informed, written consent of the customer in a form "distinct and separate from any form setting forth other legal or financial obligations." 18 U.S.C. § 2710(b)(1) and (b)(2)(B)(i).

25. The VPPA defines Personally Identifiable Information as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

26. Individuals can sue in civil court for damages, and to emphasize the seriousness of these privacy violations, Congress set minimum liquidated damages for a violation of the VPPA at $2,500 per violation. 18 U.S.C. § 2710(c)(2)(A).

27. Here, Shout chose to deprive Plaintiffs and members of the class of their rights under the VPPA by systematically disclosing their Personally Identifiable Information to third parties, including Facebook and Zigpoll, without the statutorily required informed, written consent.

**B. The Facebook ID**

28. A Facebook ID, or "FID," is a unique and persistent identifier that Facebook assigns to each user. When an individual creates a Facebook account, a corresponding FID is assigned.

29. Facebook, or any other ordinary person, can readily access any consumer's corresponding Facebook profile by simply appending the individual's FID to the end of "facebook.com/."

30. Further, Facebook is a "real identity platform," meaning that users are allowed only one account and must share the name they use in everyday life. When creating an account, users must provide their first and last name, along with their birthday and gender.

31. The FID itself represents a particular individual. Therefore, as Facebook requires real names and information, Plaintiffs and class members are readily identifiable by their names, pictures, and other profile information accessible via the FID.

32. Facebook profits by selling advertising that targets users with specific experiences, likes, and preferences. The Facebook[2] Pixel, discussed below, is a piece of code that advertisers, like Defendant, can integrate into their websites to collect information on consumers.

**C. How Defendant Unlawfully Discloses Personally Identifiable Information**

33. Shout owns and operates the direct to consumer ecommerce sites shoutfactory.com and ghiblicollection.com

34. An integral component of Shout's business model is the sale of movies, TV shows, and other video materials to consumers through its websites.

35. Plaintiffs and other class members purchased video materials on Shout's websites.

---

[2] The company that owns Facebook rebranded as "Meta" in 2021. Thus, this piece of code is sometimes referred to interchangeably as the "Facebook Pixel" or the "Meta Pixel." Facebook is a Meta-owned, distinct social media platform relevant to this case because it is the platform by which Plaintiff and class members are identified. For simplicity and consistency, Plaintiff refers to the code at issue as the "Facebook Pixel."

36. On information and belief, Shout collects and discloses Personally Identifiable Information about its consumers' movie, TV show, and other video purchases to third parties, including Facebook and Zigpoll.

37. At no point during the purchase process does Shout obtain the informed, written consent of the consumer in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer, or otherwise put the consumer on notice of any such agreement.

38. In designing its websites, Shout chose to install and configure certain code, referred to as the Facebook Pixel and the Zigpoll Widget, thus making the knowing choice to collect its users' Personally Identifiable Information and disclose that information to Facebook.

39. The use of the Facebook Pixel is not necessary for Shout to operate its websites. Rather, Shout's installation of this code compels the collection of consumer data and the associated disclosure to Facebook so Shout can monetize and target advertisements to potential customers.

40. The use of the Zigpoll Widget is also not necessary for Shout to operate its website. Rather, Shout's installation of this code compels the collection of consumer data and the associated disclosure to Zigpoll so Shout can gain insight into consumer behavior and preferences for marketing purposes.

41. The Facebook Pixel installed by Shout collects data regarding the actions of customers. This includes the tracking and disclosure of the video materials that consumers request. Shout's websites host the Facebook Pixel and sends event data to Facebook when users take certain actions, as programed by Shout.

42. If a consumer with a Facebook account uses the same browser to request video material on Shout's websites, the consumer's FID and the name of the video material are simultaneously disclosed to Facebook, as depicted in Figure 1 below:



*Figure 1: HTTP single communication session sent from the device to Facebook, revealing the name of the video material and the consumer's FID (c_user field)*; see also larger version of image attached as Exhibit A.

43. Facebook combines the FID with the specific video materials requested or obtained by consumers to further refine its ad targeting to those individuals.

44. The Zigpoll Widget installed by Shout collects data regarding the actions of customers. This includes the tracking and disclosure of what personally identifying information consumers type in during checkout and which video materials consumers ultimately purchase. Shout's website hosts the Zigpoll Widget and sends event data to Zigpoll when users take certain actions, as programed by Shout.

45. If the consumer clicks the "Pay Now" button after inputting their checkout information, Shout discloses to Zigpoll the name of the video material, the consumer's email address, and the consumer's first and last name, as depicted in Figure 3 below:



*Figure 32: HTTP single communication session sent from the device to Zigpoll, revealing the customer's email, the customer's first and last name ("name" and "handle" field), and the name of the video material purchased; see also larger version of image attached as Exhibit B.*

46. Figures 1 and 2 are examples and snippets of unlawful disclosures made by Shout based on inspections of shoutfactory.com. Any additional disclosures that Shout makes to third parties of consumers' Personally Identifiable Information also constitute violations of the VPPA.

47. Anyone can easily identify a specific consumer by either their first and last name, their email account, or appending the "c_user" FID to "facebook.com/" in a web browser. So, in violation of the VPPA, Shout discloses—at the same time—the identity of the person and the specific video content requested or obtained by that consumer.

## CLASS ALLEGATIONS

48. Plaintiffs bring this lawsuit under Federal Rule of Civil Procedure 23, on their own behalf and on behalf of the following Class:

10

> All persons in the United States who purchased video materials from an online website owned and/or operated by Defendant Shout! Factory, LLC.

49. Excluded from the Class are Defendant, its past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns, and any entity in which any of them have a controlling interest, as well as judicial officers assigned to this case as defined in 28 U.S.C. § 455(b) and their immediate families.

50. Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

51. **Numerosity (Fed. R. Civ. P. 23(a)(1))**: Members of the Class are so numerous and geographically dispersed that joinder of all members of the Class is impracticable. Given the size of Defendant's business, Plaintiffs believe there are easily thousands of class members in the United States. The number of class members can be determined through Defendant's records, non-party Facebook's records, and non-party Zigpoll's records.

52. **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiffs' claims are typical of the claims of members of the Class. Plaintiffs and Class Members were harmed by the same wrongful conduct in that Defendant caused their video requests to be disclosed to third parties without obtaining express written consent in a form that comports with the VPPA's statutory requirements. Plaintiffs' claims are based on the same legal theories as the claims of other Class Members.

53. **Adequacy (Fed. R. Civ. P. 23(a)(4))**: Plaintiffs will fairly and adequately protect and represent the interests of the members of the Class. Plaintiffs' interests are consistent with, and not antagonistic to, those of the members of the Class. Plaintiffs are represented by counsel

11

with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.

54. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3))**: Common questions of law and fact exist and predominate over questions affecting only individual Class members. Questions common to the Class that will determine the outcome of this action include:

   a. Whether Defendant installed the Facebook Pixel on its websites to collect and disclose information, including video material title(s) and FIDs, when consumers purchase video materials on Defendant's websites;

   b. Whether Defendant installed the Zigpoll Widget on its websites to collect and disclose information, including video material title(s), names, and/or emails, when consumers purchase video materials on Defendant's websites;

   c. Whether the information disclosed to third parties constitutes Personally Identifiable Information under the VPPA;

   d. Whether Plaintiffs are consumers under the VPPA; and

   e. Whether Defendant disclosed, and continues to disclose, Personally Identifiable Information without consent.

55. **Superiority (Fed. R. Civ. P. 23(b)(3))**: Class treatment is the superior method for a fair and efficient adjudication of this controversy as individualized litigation of the claims of class members is impractical. Class treatment will permit thousands of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that individual lawsuits would entail. The benefits of proceeding through the class mechanism, including providing injured persons a

method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh any potential difficulties in managing this class action.

56. The complex nature of the litigation, along with the expenses associated with vigorous prosecution of these claims, renders individual lawsuits irrational and not economically viable.

57. Class certification is also appropriate for equitable or injunctive relief because Defendant has acted or refused to act on grounds that apply generally to the class such that final injunctive relief is appropriate for the Class as a whole.

## CLAIM FOR RELIEF

**Violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710**

58. Plaintiffs incorporate all foregoing paragraphs as though fully set forth herein.

59. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant for privacy violations prohibited by the VPPA.

60. The VPPA prohibits a "Video Tape Service Provider" from knowingly disclosing "Personally Identifiable Information" concerning any consumer to a third party without "informed written consent." 18 U.S.C. § 2710.

61. Defendant is a Video Tape Service Provider because it engages in the business of the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Put more simply: Defendant is an online media retailer, and online media retailers sell and deliver movies, TV shows, and other video materials.

62. Under 18 U.S.C. § 2710(a)(3), "Personally Identifiable Information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

13

63. For consumers purchasing video materials on Defendant's websites, the information Defendant transmitted to Facebook and/or Zigpoll without authorization constitutes Personally Identifiable Information because it identifies Plaintiffs and other class members by their FID, first and last name, and/or email address and includes the specific video materials purchased by that person.

64. Under 18 U.S.C. § 2710(a)(1), a "Consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Each Plaintiff is a consumer because he purchased goods or services from Defendant; he purchased movies and TV shows that Shout shipped to him. Plaintiffs and all class members purchased video goods from Defendant.

65. Defendant knowingly disclosed Plaintiffs' Personally Identifiable Information to another person, Facebook, because Defendant chose to install the Facebook Pixel on its website, thereby disclosing to Facebook information that identifies the specific video materials requested or obtained by consumers and the FID of the consumer making the purchase. Defendant knew that Facebook would identify consumers who visited Defendant's website, and Defendant transmitted the information regarding which video materials consumers purchased.

66. Defendant also knowingly disclosed Plaintiffs' Personally Identifiable Information to another person, Zigpoll, because Defendant chose to install the Zigpoll Widget on its website, thereby disclosing information to Zigpoll that identifies the specific video material requested or obtained by consumers and the full name and email address of the consumer making the purchase. Defendant knew that Zigpoll would identify consumers who visited Defendant's websites, and Defendant transmitted the information regarding which video materials consumers purchased.

67. Plaintiffs and members of the Class did not provide Defendant with any form of consent that would authorize it to disclose their Personally Identifiable Information to third parties, nor did Defendant have authorization by means of court order or any other part of the VPPA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed class, respectfully requests that this Court:

a. Enter an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure;

b. Designate Plaintiffs as the representatives of the Class and designate Plaintiffs' counsel as counsel for the Class;

c. Declare that Defendant violated the Video Privacy Protection Act;

d. Order Defendant to pay a minimum of $2,500 to each Class member for each violation of the Video Privacy Protection Act, 18 U.S.C. § 2710(c)(2)(A);

e. Award punitive damages in an amount to be determined at trial, 18 U.S.C. § 2710(c)(2)(B);

f. Grant appropriate injunctive relief;

g. Award reasonable attorneys' fees and costs and expenses, 18 U.S.C. § 2710(c)(2)(C);

h. Award pre- and post-judgment interest; and

i. Grant such other relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, individually and on behalf of the proposed Class, demand a trial by jury on all issues so triable.

Dated: October 28, 2024

Respectfully submitted,

/s/ *Jeremiah W. Nixon*
Anthony G. Simon N.D. Ill. bar No. 6209056
Jeremiah W. Nixon N.D. Ill. bar No. 6319401
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029  asimon@simonlawpc.com
jnixon@simonlawpc.com

Frank S. Hedin
**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, FL 33134
Phone:     (305) 357-2107
Fax: (305) 200-8801
fhedin@hedinllp.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send a notification to all ECF registrants who are counsel of record for this matter.

/s/ *Jeremiah W. Nixon*