UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHOUT! FACTORY, LLC,<br><br>Defendant. | Case No.: 1:24-cv-6426<br><br>Hon. Thomas M. Durkin |

**PLAINTIFFS' UNOPPOSED[1] MOTION AND MEMORANDUM IN SUPPORT TO APPOINT INTERIM CLASS COUNSEL**

Plaintiffs Sam Welbel, Michael Archer, and Dylan Macaluso respectfully move for an order appointing Anthony G. Simon and Jeremiah W. Nixon of The Simon Law Firm, P.C., and Frank S. Hedin of Hedin LLP (individually, "Simon" and "Hedin," and collectively, "Proposed Co-Lead Counsel") as interim co-lead class counsel. Rule 23(g)(3) permits this Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). As detailed herein, the appointment of Proposed Co-Lead Counsel will allow for the most effective and efficient representation of the interests of the putative class. Proposed Co-Lead Counsel respectfully submit that appointing them to manage this litigation would best serve the interests of the putative class. In support of this motion, Plaintiffs submit the following memorandum.

---

[1] Proposed Co-Lead Counsel conferred with Defendant's counsel regarding their position. Defendant has indicated that its current position is that class certification is not appropriate, but Defendant takes no position on Plaintiffs' motion to appoint interim class counsel.

## BACKGROUND

This case is a consumer privacy class action seeking relief for Plaintiffs and other similarly situated individuals. On July 25, 2024, Plaintiff Sam Welbel, through counsel The Simon Law Firm, P.C., filed this putative class action. *See* ECF No. 1 ("*Welbel*"). Plaintiff Welbel alleges that Shout! Factory, LLC violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by disclosing consumers' personally identifiable information to third parties. *Id.* On August 20, 2024, Plaintiffs Michael Archer and Dylan Macaluso, through counsel Hedin LLP, filed a substantially similar complaint in the United States District Court for the Central District of California. *See Archer et al. v. Shout! Factory, LLC*, 2:24-cv-07056 (C.D. Cal) at ECF No. 1 ("*Archer*"), attached as Exhibit A to the Nixon declaration. The *Archer* Complaint is based on the same underlying conduct.[2] Counsel in the *Welbel* and *Archer* matters are now coordinating their efforts to prosecute these VPPA violations on behalf of the putative class.

Defendant Shout! Factory, LLC, has expressed a desire to discuss settlement, and on September 9, 2024, Plaintiff Welbel agreed to file a joint motion to stay all deadlines in this matter while the parties explore a possible resolution. *See* ECF No. 12. The Court granted the joint motion and extended Shout! Factory, LLC's deadline to respond to the complaint to November 15, 2024. ECF No. 13. Settlement discussions are ongoing.

---

[2] The class definitions in the original *Welbel* and *Archer* complaints vary slightly. *See Welbel* Compl. (ECF No. 1) at ¶ 46 (defined as "All persons in the United States who purchased video materials from an online website owned and/or operated by Defendant Shout! Factory, LLC."); *Archer* Compl. (C.D. Cal., 2:24-cv-07056, ECF No. 1) at ¶ 65 (defined as "all persons in the United States who, during the two years preceding the filing of this action, purchased video content from Defendant's websites as a consumer of Defendant's websites and while maintaining an account with Meta Platforms, Inc. f/k/a Facebook, Inc."). The first amended complaint has harmonized the class definition for future filings. *See* ECF No. 20 at ¶ 48.

After commencing settlement discussions and filing the motion to stay for that purpose, counsel recently learned of a complaint filed on October 2, 2024, in the Northern District of Illinois, alleging VPPA violations against the same Defendant. *See McGrath v. Shout! Factory, LLC*, 1:24-cv-09360 (N.D. Ill.) ("*McGrath*"), complaint attached to Nixon Decl., at Ex. B. The *McGrath* complaint essentially mirrors the same VPPA violations against the same defendant and bases those allegations on the same underlying conduct. *Id.*

Appointment of interim class counsel is warranted to protect the interests of the putative class and to ensure the action proceeds efficiently as a putative class action. It is also warranted so counsel can effectively engage in settlement discussions on behalf of the putative class members. Proposed Co-Lead Counsel, collectively and individually, are well qualified to represent the proposed class under the criteria established by Rule 23(g) for selecting interim class counsel. Fed. R. Civ. P. 23. For these reasons, detailed further below, Plaintiffs move for this Court to appoint Proposed Co-Lead Counsel as interim co-lead class counsel.

## LEGAL STANDARD

Rule 23(g)(3) provides that the court may "designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The designation of interim counsel clarifies the responsibility for protecting the interests of the class during precertification activities. Manual for Complex Litigation (Fourth) § 21.11 (2004). Appointing interim class counsel "is necessary to protect the interests of class members" when "overlapping, duplicative, or competing class suits are pending before a court." *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020) (citation omitted). Appointing interim class counsel at this stage in the proceedings eliminates duplicative work going forward and will provide Proposed Co-Lead Counsel the

3

opportunity to work on behalf of the proposed class in an organized and efficient manner, which is in the best interests of both the proposed class and this Court.

In appointing class counsel, the court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed R. Civ. P. 23(g)(1)(A); *see also Moehrl*, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020). Courts have also used these same criteria in determining which firm to appoint as interim class counsel. *See Moehrl*, 2020 WL 5260511 at *1-2 (N.D. Ill. May 30, 2020). The Court may also "consider other matters pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## DISCUSSION

All factors weigh in favor of appointing Proposed Co-Lead Counsel to represent the putative class on an interim basis. The Simon and Hedin firms filed the first two class action complaints alleging that Shout! Factory, LLC violated the VPPA, and both firms have extensive class action experience and ample resources to pursue this litigation through trial and appeals. Proposed Co-Lead Counsel have also proactively engaged in collaborative efforts, and the collaboration between Simon and Hedin to self-organize is precisely the type of effort that is encouraged. *See, e.g.*, Manual For Complex Litigation (Fourth) §10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be

encouraged."). The Court should appoint the Simon and Hedin attorneys as interim class counsel to facilitate effective and efficient litigation on behalf of the putative class.

> **I.  Proposed Co-Lead Counsel filed the first class action complaints against Shout! Factory LLC and have done the most work in "identifying or investigating potential claims in the action."**

The first factor considered by Court in appointing class counsel is the work performed by counsel in "identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). One factor a court may consider is whether an attorney has undertaken "the process of drafting the complaint, [which] requires investigatory and analytical effort." *Walker v. Discover Fin. Services*, No. 10-cv-6994, 2011 WL 2160889, at *3 (N.D. Ill. May 26, 2011) (citing Moore's Federal Practice § 23.120(3)(a)(2007)).

Proposed Co-Lead Counsel filed the initial complaint in July (ECF No. 1). The *McGrath* complaint was not filed until October. *See* Nixon Decl., Ex. B. This District has previously held that the first firm to file their complaint has performed "the most work in identifying and investigating potential claims." *See Walker*, 2011 WL 2160889, at *4 (finding that a three-month head-start in the filing of complaints was significant enough to justify a leadership role). In contrast, the firm that files its complaint later has "the advantage of the groundwork laid by [the first firm to file], including a filed complaint." *Daly v. W. Monroe Partners, Inc.*, No. 21-cv-06805, 2022 WL 2159843, at *2 (N.D. Ill. June 15, 2022).

Proposed Co-Lead Counsel not only conducted the initial research and due diligence required by counsel in investigating the potential claims in this action but has continued to undertake additional work. Proposed Co-Lead Counsel's extensive and time-consuming work identifying and investigating the claims alleged in the VPPA actions, as well as the underlying theory of liability against Defendant for violating the VPPA, demonstrates that they will continue

5

to fairly and adequately represent the proposed Class. Specifically, both the Simon and Hedin firms (i) investigated potential legal claims under the VPPA; (ii) researched numerous online trackers created by different technology companies, including learning how they operate, how to find them in website source code, and how to identify what information is being tracked and transmitted; (iii) investigated Defendant's website and its use of tracking technology, including parsing through Defendant's website's source code; (iv) researched whether Defendant's use of tracking pixels violated the VPPA; (v) investigated the viability of various individuals' claims by interviewing numerous potential clients, completing intakes, and speaking with potential plaintiffs at length regarding their experiences with Defendant's websites and the information they provided on the website; (vi) investigated the adequacy of the named Plaintiffs to represent the putative class; (vii) prepared the Complaints in their respective actions on behalf of the proposed class; (viii) evaluated Shout! Factory, LLC's likely defenses based on extensive factual and legal research; (ix) engaged in settlement discussions with counsel for Shout! Factory, LLC; (x) researched and analyzed data related to class damages; and (xi) researched and drafted court filings and anticipated court filings. *See* Nixon Decl., ¶ 7; *see also* Declaration of Frank S. Hedin, ¶¶ 8-12. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the courts should consider in appointing interim class counsel.

The work done by Proposed Co-Lead Counsel leading up to the filing of their respective actions is precisely the type of "identifying or investigating" to be considered under Rule 23(g) for the appointment of interim class counsel. Additionally, the undertakings by each firm since filing their complaints are the type of "analytical tasks" that this District applauded in *Walker*. 2011 WL 2160889, at *3. The criteria set forth in Rule 23(g)(1)(A)(i) supports the appointment of Proposed Co-Lead Counsel in this instance.

**II.     Proposed Co-Lead Counsel have extensive experience in successfully litigating class actions, including those that assert the types of claims in this instant case.**

The second and third factors concern counsel's experience handling complex matters and counsel's knowledge of the law. Fed R. Civ. P. 23(g)(1)(A)(ii) and (iii). Both The Simon Law Firm P.C. and Hedin LLP have significant experience in handling class actions, other complex litigation, and the types of claims asserted in this action. Through their past litigation experience, Proposed Co-Lead Counsel have developed detailed legal and technical expertise in VPPA litigation and applicable privacy class action law.

   *a.*  ***The Simon Law Firm, P.C.***

The Simon Law Firm has a distinguished record of success in class action litigation, obtaining millions of dollars in relief for consumers, homeowners, and employees. *See, e.g.*, *Woods v. QC Financial Services Inc., d/b/a/ Quik Cash*, Case No. 12SL-CC00318 (St. Louis County Cir. Ct. Feb. 2012) ($25 million settlement obtained in predatory lending class action); *see also Hooper v. Advance America*, No. 2:08-cv-4045 (W.D. Mo. Nov. 4, 2010).

The Simon Law Firm is well qualified to serve as interim co-lead counsel in this matter, having previously held leadership positions in large and complex class actions, including attorney Anthony Simon's role on the Steering Committee in *In re Apple Inc. Device Performance Litig.*, 5:18-md-02827 (N.D. Cal.), which resulted in a $310 million settlement. Jeremiah Nixon also has experience litigating class actions and privacy cases specifically. For example, he was part of the team that litigated *CS Wang, et al. v. Wells Fargo, et al. a/k/a Express Hauling, et al. v. Fifth Third Bank, et al.*; 1:16-cv-11223 (N.D. Ill.) (California Invasion of Privacy Act claims settled for a combined $78 million). The Simon Law Firm is actively litigating class actions in numerous jurisdictions, and more information is provided in the Firm Resume attached as Exhibit C to the Nixon declaration.

7

In addition to its experience and success in class action litigation, The Simon Law Firm has gained expertise in the relevant laws for this instant case by handling similar cases, including claims under the VPPA and other data privacy claims. *See, e.g.*, *Valentini et al v. Reading International, Inc.*, 2:24-cv-00255 (D. Nev.) (VPPA class action against movie theater chain and website operator); *Ambriz v. Google, LLC*, 3:23-cv-05437 (California Invasion of Privacy Act class action alleging third-party eavesdropping or wiretapping of customer service phone calls).

Additionally, attorney Jeremiah Nixon is familiar with litigating cases in the Northern District of Illinois. Before joining The Simon Law Firm, Mr. Nixon worked for a complex litigation firm in Chicago with a caseload venued primarily in the Northern District of Illinois. *See* Nixon Decl., ¶ 11. When discussing factors to be considered in addition to those in Rule 23(g), The Manual explains that it "is important to assess […] the attorney's ability to command the respect of their colleagues." Manual for Complex Litigation (Fourth) § 10.224. The Simon Law Firm has received significant praise for its success in litigation. The Simon Law Firm has been ranked by U.S. News as one of the "Best Law Firms" in multiple areas of litigation, including Class Actions and Mass Tort Litigation. It was also named one of the "winningest firms" in the U.S. by The National Law Journal. Anthony Simon has received numerous awards for his work, including being named a Missouri and Kansas Super Lawyer ® every year since 2010. Recently, Mr. Simon was named 2025 Best Lawyers ® "Lawyer of the Year" for bet-the-company litigation in the St. Louis Area.

b. **Hedin LLP**

Based in Miami, Florida, with offices in San Francisco and Washington D.C., Hedin LLP focuses exclusively on class actions in the consumer, data-privacy, and securities realms. Courts recognize the firm's "extensive experience in class actions," *Luczak v. Nat'l Beverage Corp.*,

2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018), and regularly note the quality of the firm's work on behalf of its clients in such matters. *See, e.g., Groover v. Prisoner Transp. Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) (noting that Hedin "provided excellent and thorough representation in a case that was exceptionally time-consuming").

Over the past six years alone, Hedin LLP has recovered over $500 million in all-cash relief for classes of consumers and investors. *See, e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Edwards v. Hearst Communications, Inc.,* 1:15-cv-09279-AT-JLC (S.D.N.Y.) (same, $50 million non-reversionary class settlement); *Kokoszki v. Playboy Enters., Inc*., No. 19-cv-10302 (E.D. Mich.) (same, $3.8 million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v KSE Sportsman Media, Inc*., No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc*., No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc*., No. 22-cv-10666 (E.D. Mich.) (same, $5

9

million non-reversionary class settlement with automatic payments to all class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million non-reversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020-CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc., et al.,* No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.,* No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement).

   Mr. Hedin regularly serves as lead plaintiffs' counsel in class actions that implicate novel questions of first impression concerning the rights of consumers under relatively unknown state statutes, as well as the constitutional issues (standing and otherwise) that often arise during the

prosecution of such matters in federal court. *See* Hedin Decl., ¶ 5. For example, in data-privacy class actions concerning publishers' disclosure of subscriber information—substantially the same conduct at issue in this case—Mr. Hedin obtained groundbreaking decisions on two important issues under Michigan's Preservation of Personal Privacy Act ("PPPA"), Mich. Comp. Laws § 445.771 et. seq. that dramatically expanded the scope of the statute and led to the recovery of meaningful relief for consumers throughout Michigan. *See id.* (citing *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018) (holding, despite prior district court decision to the contrary on the same issue, that the version of the PPPA in effect prior to its July 2016 amendment applied to claims filed after the amendment's effective date); *Lin v. Crain Commc'ns Inc.*, No. 19-11889, 2020 WL 248445, at *4 (E.D. Mich. Jan. 16, 2020) (holding that Michigan-based publishers may be held liable for disclosing the data of all of their subscribers, even those outside Michigan).

Mr. Hedin also obtained multiple significant victories for consumers on issues of first impression in litigation against Google and Shutterfly under an Illinois statute, the Biometric Information Privacy Act ("BIPA"), opening doors for consumers throughout the state to recover relief under the statute. *See* Hedin Decl., ¶ 6 (citing *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015) (holding that scans of face geometry collected from photographs constitute "biometric identifiers" within the meaning of BIPA); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017) (holding that neither the presumption against extraterritoriality nor the dormant commerce clause bars BIPA's application to the collection of Illinoisans' biometrics from devices within Illinois); *Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *8 n.5 (N.D. Ill. Sept. 15, 2017) (holding that the nonconsensual collection of a scan of face geometry, a bare violation of BIPA, is a concrete and particularized injury sufficient to confer Article III standing)).

Mr. Hedin is well-suited to continue representing the affected Class members in the VPPA Actions given the significant amount of work he and his firm have performed on this matter to date, as well as his extensive experience prosecuting the other similar consumer data-privacy matters outlined above.

Given the lessons learned and experience gained in litigating the above-mentioned actions, the proposed class in the instant matter would benefit from the appointment of Proposed Counsel as interim co-lead class counsel.

### III. Proposed Co-Lead Counsel are prepared to commit substantial resources to advance the best interests of the proposed class.

Proposed Co-Lead Counsel each have well-established and successful practices and have both the resources and personnel necessary to pursue a case of this magnitude. With a proven track record of successfully managing high-stakes litigation—underscored by Proposed Co-Lead Counsel's impressive collective history of securing billions of dollars in settlements and verdicts—Proposed Co-Lead Counsel have demonstrated their ability to handle complex and high-profile cases effectively. Proposed Co-Lead Counsel's robust financial stability allows them to allocate significant resources to this case, including funding for expert witnesses, extensive discovery processes, and other litigation expenses. The firms' resources are not merely financial but also include substantial expertise and work product developed in similar cases, allowing them to streamline and effectively prosecute the litigation. These resources have been and will continue to be of great value to the putative class. The Simon Law Firm, P.C. and Hedin LLP collectively draw from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation, as well as a full team of non-lawyer professionals and support staff. Proposed Co-Lead Counsel are well-equipped to handle the complexities of class action litigation, ensuring thorough representation of the proposed class's best interests.

## CONCLUSION

For the foregoing reasons and any other reason this Court may see fit, Plaintiffs respectfully request that this Court appoint The Simon Law Firm, P.C., by way of its attorneys Anthony G. Simon and Jeremiah W. Nixon, and Hedin LLP, by way of attorney Frank S. Hedin, as Interim Co-Lead Class Counsel in accordance with Rule 23(g).

Dated: October 29, 2024

Respectfully submitted,

/s/ *Jeremiah W. Nixon*
Anthony G. Simon (6209056)
Jeremiah W. Nixon (6319401)
**THE SIMON LAW FIRM, P.C.**
800 Market Street, Suite 1700
St. Louis, Missouri 63101
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com

Frank S. Hedin
**HEDIN LLP**
1395 Brickell Avenue, Suite 610
Miami, FL 33134
Phone: (305) 357-2107
Fax: (305) 200-8801
fhedin@hedinllp.com

*Proposed Co-Lead Class Counsel for Plaintiffs and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send a notification to all ECF registrants who are counsel of record for this matter.

/s/ *Jeremiah W. Nixon*