**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | No.: 1:24-cv-06426 ) ) |
| SHOUT! FACTORY, LLC, | ) Hon. Thomas M. Durkin ) ) |
| Defendant. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

Joel Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant*
Shout! Factory, LLC

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................1

II.    ARGUMENT ......................................................................1

    A.    The Court Should Dismiss Plaintiffs' Claim Pursuant to 12(b)(1). ........................1

        1.    Legal Standard ........................................................1

        2.    Plaintiffs Have Not Alleged Publication Of Private, Highly Offensive Information. ........................................................2

        3.    Claims Involving Zigpoll Fail For Additional Reasons.............................6

    B.    Alternatively, Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted........................................................8

        1.    Legal Standard ........................................................8

        2.    Plaintiffs Fail to Allege Actual Damages. ................................8

        3.    Plaintiffs Do Not—And Cannot—Allege That Defendant Knowingly Disclosed PII In Violation Of The VPPA With Respect to Facebook. .....10

            a)    The FID Is Not PII. ...........................................11

            b)    Even if the FID Was PII, Plaintiffs Allege Their Own Browser Disclosed the Information, Not Defendant ....................13

            c)    Plaintiffs Have Not Alleged A "Knowing" Disclosure. ...............15

        4.    The VPPA Violates The First Amendment. ..............................15

            a)    The VPPA Imposes Suspect Burdens. ...........................16

            b)    The VPPA Fails First Amendment Scrutiny................................16

III.    CONCLUSION...................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ................................................. 2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................. 8

*Ballinger v. City of Oakland*,
  398 F. Supp. 3d 560 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022) .......................... 18

*Barclift v. Keystone Credit Servs., LLC*,
  93 F.4th 136 (3d Cir. 2024) .................................................. 4

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020) .............................................................. 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................. 8

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980) .......................................................... 16, 17

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) .............................................................. 16

*City of Ladue v. Gilleo*,
  512 U.S. 43 (1994) ................................................................ 19

*Clapper v. Amnesty Intern. USA*,
  568 U.S. 398 (2013) .............................................................. 2

*Doe v. Chao*,
  540 U.S. 614 (2004) .............................................................. 9

*Eichenberger v. ESPN, Inc.*,
  No. 14–cv–463 (TSZ), 2015 WL 7252985 (W.D. Wash. May 7, 2015) .......................... 11

*Ellis v. Cartoon Network, Inc.*
  803 F.3d 1251 (11th Cir. 2015) .......................................... 11, 12

*Evers v. Astrue*,
  536 F.3d 651 (7th Cir.2008) ................................................ 2

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .................................................................14

*Fanin v. U.S. Dep't of Veterans Affs.*,
    572 F.3d 868 (11th Cir. 2009) .............................................................9, 10

*FCC v. Airadigm Communications, Inc.*,
    616 F.3d 642 (7th Cir. 2010) ...................................................................8

*GEFT Outdoor, L.L.C. v. City of Westfield*,
    491 F. Supp. 3d 387 (S.D. Ind. 2020) ...................................................17

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
    527 U.S. 173 (1999) ...............................................................................19

*Gresham v. Peterson*,
    225 F.3d 899 (7th Cir. 2000) .................................................................17

*Halperin v. Int'l Web Servs., LLC*,
    70 F. Supp. 3d 893 (N.D. Ill. 2014) ........................................................2

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ......11

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    48 F.4th 1236 (11th Cir. 2022) ................................................................4

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022).........14

*Mount v. PulsePoint, Inc.*,
    No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ...........14

*Nabozny v. Optio Sols. LLC*,
    84 F.4th 731 (7th Cir. 2023) ...........................................................3, 4, 5

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016).......................................................11, 12, 13

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).................................................................................2

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015).........................................................................16, 17

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015).......................................10, 11, 12

*Rodriguez v. Sony Computer Ent. Am., LLC*,
  801 F.3d 1045 (9th Cir. 2015) .............................................................................7

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ...........................................................................................19

*Salazar v. Nat'l Basketball Ass'n*,
  118 F.4th 533 (2d Cir. 2024) ...............................................................................4

*Shields v. Prof. Bureau of Collections*,
  55 F.4th 823 (10th Cir. 2022) .............................................................................4

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) .......................................................................15, 16, 17, 19

*Sosa v. Onfido, Inc.*,
  600 F. Supp. 3d 859 (N.D. Ill. 2022) ...............................................................17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................................2, 3, 7

*Sterk v. Redbox Automated Retail, LLC*,
  770 F.3d 618 (7th Cir. 2014) ..........................................................................3, 7

*Tawam v. Feld Ent. Inc.*,
  684 F. Supp. 3d 1056 (S.D. Cal. 2023) ............................................................20

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002) ...........................................................................................17

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................. *passim*

*U.S. West, Inc. v. FCC*,
  182 F.3d 1224 (10th Cir. 1999) ...................................................................15, 18

*United States v. Dawson*,
  64 F.4th 1227 (11th Cir. 2023) ............................................................................9

*United States v. Palomares*,
  52 F.4th 640 (5th Cir. 2022) ...............................................................................9

*United States v. Sparks*,
  806 F.3d 1323 (11th Cir. 2015) .........................................................................18

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ............................................................20

*Wollschlaeger v. Governor of Fla.*,
   848 F.3d 1293 (11th Cir. 2017) ..................................................................17

*Wooten v. La Salle Corr.*,
   No. 7:22-CV-000148 (WLS), 2024 WL 4132331 (M.D. Ga. Sept. 10, 2024) .......................18

**Statutes**

5 U.S.C. § 552a(i)(1) ..........................................................................................9

5 U.S.C. § 552a(g)(4)(A) ....................................................................................9

15 U.S.C. § 1692c(b) ..........................................................................................4

18 U.S.C. § 2710 ................................................................................................1

18 U.S.C. § 2710(a)(2) .......................................................................................6

18 U.S.C. § 2710(a)(3) ................................................................................10, 19

18 U.S.C. § 2710(a)(4) .....................................................................................19

18 U.S.C. § 2710(b)(1) ...........................................................................8, 15, 16

18 U.S.C. § 2710(b)(2)(E) ..................................................................................6

18 U.S.C. § 2710(c) ............................................................................................8

U.S. Const. amend. I ........................................................................................15

U.S. Const. art. III ..............................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................................8

**Other Authorities**

*Conjunctive/disjunctive canon*, Black's Law Dictionary (10th ed. 2014).......................9

*Damages*, Black's Law Dictionary (5th ed. 1979) ...........................................10

*Disclosure*, Black's Law Dictionary (12th ed. 2024) ........................................6

(https://www.merriam-webster.com/dictionary/cookie) (last visited March 12,
   2025) ...........................................................................................................14

J.G. Sutherland, Statutes And Statutory Construction § 267 (1st ed. 1891) ...................................8

Restatement (Second) of Torts § 652D (1977) .........................................................................4, 5

S. Rep. No. 100-599 (1988) ...................................................................................................7, 18

## I.      INTRODUCTION

Plaintiffs Sam Welbel, Michael Archer, and Dylan Macaluso ("Plaintiffs") have filed this putative class action under the federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), alleging that they visited Defendant Shout! Factory, LLC's ("Defendant") website to purchase video materials while logged into their Facebook accounts. They further allege that during their visit, Defendant disclosed personally identifiable information and video viewing information to Facebook and Zigpoll through the Facebook Pixel and the Zigpoll widget installed on Defendant's website without obtaining Plaintiffs' consent in violation of the VPPA. However, Plaintiffs lack Article III standing to bring their claim, as a statutory violation alone does not satisfy the injury-in-fact requirement where there is no concrete harm. Alternatively, even if Plaintiffs did have standing, Plaintiffs have not alleged conduct violative of the VPPA because a Facebook ID is a static digital identifier, and not personally identifiable information; they have failed to allege damages; the ordinary course of business exception applies to any alleged disclosure to Zigpoll; and the VPPA violates the First Amendment. The Amended Complaint should be dismissed in its entirety.

## II.     ARGUMENT

### A.      The Court Should Dismiss Plaintiffs' Claim Pursuant to 12(b)(1).

#### 1.      <u>Legal Standard</u>

A motion to dismiss under Rule 12(b)(1) disputes the existence of the Court's subject-matter jurisdiction. When considering a motion that presents a factual attack against subject-matter jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in

fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Evers v. Astrue,* 536 F.3d 651, 656–57 (7th Cir.2008)).

    To have standing under Article III of the U.S. Constitution, Plaintiffs must allege that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To meet the first requirement, they must allege that they have suffered a "concrete – that is, real, and not abstract" injury that has a "close historical or common-law analogue" "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021) (internal quotation marks omitted). Plaintiffs must also establish that their alleged injury is "actual or imminent," meaning the "threatened injury must be certainly impending." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (citation omitted). Because standing is a constitutional requirement, a court faced with a challenge to standing must resolve that issue before proceeding further with the case. *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 897 (N.D. Ill. 2014) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).

### 2.    Plaintiffs Have Not Alleged Publication Of Private, Highly Offensive Information.

    "[E]ven in the context" of alleged "statutory violation[s]" like the VPPA, Plaintiff must show a "concrete injury." *Ramirez*, 594 U.S. at 426 (quoting *Spokeo*, 578 U.S. at 341). Under Article III, "an injury in law is not an injury in fact." *Id.* "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* Whether a concrete harm was suffered requires plaintiff to identify "a close historical or common-law analogue for their asserted injury." *Id.* at 424.

In *Sterk v. Redbox Automated Retail, LLC*, the Seventh Circuit held plaintiffs who alleged disclosure of personal information in violation of the VPPA had Article III standing, reasoning "Congress does have the power to 'enact statutes creating legal rights, the invasion of which creates standing, even though not injury would exist without the statute.'" 770 F.3d 618, 623 (7th Cir. 2014). Significantly, the *Sterk* decision predates the Supreme Court's decisions in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which fundamentally changed the applicable analysis regarding standing when the claimed injury stems solely from a violation of a federal statute and made clear that invasion of a legal right statutorily created by Congress is *not* sufficient to confer standing. *See generally Spokeo*, 578 U.S. 330; *TransUnion*, 594 U.S. 413. As the Seventh Circuit has more recently explained, "*TransUnion* emphatically reminded us that 'under Article III, an injury in law is not an injury in fact.' As both *Spokeo* and *TransUnion* make clear, Congress's enactment of statutory obligations and a private cause of action for violations does not displace or dilute Article III limitations on our jurisdiction." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 738 (7th Cir. 2023) (quoting *TransUnion*, 594 U.S. at 427)).

In *Nabozny v. Optio Sols. LLC*, the Seventh Circuit applied the principles from *Spokeo* and *TransUnion* in affirming the district court's dismissal for lack of Article III standing, holding that Nabozny suffered no injury from the alleged Fair Debt Collection Practices Act ("FDCPA") violation. *Nabozny*, 84 F.4th at 732-33. There, Nabozny received a letter regarding an unpaid debt, and the letter included information including the creditor, balance, account number, and her name and address. *Id.* at 733. The letter was printed and mailed by a third-party vendor that the defendant used for mailings. *Id.* at 732. Nabozny sued the defendant on behalf of herself and a putative class

- 3 -

because she did not give the defendant consent to share information about her debt with a third party in violation of § 1692c(b) of the FDCPA. *Id.*

In affirming the dismissal, the Court analyzed whether she suffered a concrete harm under Article III. *Id.* at 734. Reviewing the factual allegations in her complaint, the *Nabozny* court determined the closest common law privacy tort was "the tort of publicity given to another person's private life or, as some sources phrase it, the public disclosure of private facts. A person commits this civil wrong if he 'gives publicity' to a matter that concerns 'the private life of another,' is 'highly offensive to a reasonable person' and is not of legitimate public concern." *Id.* at 735 (quoting Restatement (Second) of Torts § 652D (1977)). But her complaint did not contain allegations that the defendant made her private information public. Instead, she alleged that the defendant disclosed pieces of private debt information to a third party, who used that information to populate a letter. *Id.* at 735-36. The Seventh Circuit recognized that there was no *public* disclosure, and no allegations to suggest that anyone at the third part vendor "read or appreciated her information." *Id*. *Nabozny* is consistent with post-*Ramirez* decisions in other circuit courts which have held that consumers do not suffer a concrete injury under Article III when their information is disclosed to a business, rather than the public at large, because such claims "lack[] a necessary element of the comparator tort – the requirement that the disclosure be public." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*); *Shields v. Prof. Bureau of Collections*, 55 F.4th 823, 829 (10th Cir. 2022); *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024). *Contra Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 544 (2d Cir. 2024).

Here, like in *Nabozny*, Plaintiffs do not allege they suffered any tangible harm (*i.e.*, physical or monetary injury). Likewise, Plaintiffs do not allege to have suffered any intangible

harm (*i.e.*, injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts). In *Ramirez*, for instance, the Supreme Court held the harm from being misleadingly labeled a "potential terrorist" bears a "sufficiently close relationship to the harm from a false and defamatory statement" to satisfy an intangible harm. 594 U.S. at 433. Here, however, Plaintiffs do not allege Defendant made an allegedly defamatory statement about them; Plaintiffs' sole purported injury is the "loss of privacy" in their video-watching habits as a result of Defendant's alleged use of the Facebook Pixel and Zigpoll Widget on its website. ECF No. 20, ¶¶ 1, 26-27, 59. Information merely identifying movies that a person has purchased is not the type of information traditionally regarded as "'highly offensive to a reasonable person.'" *See Nabozny*, 84 F.4th at 735. And the alleged disclosure of information to Facebook and Zigpoll "does not remotely resemble the publicity element of the only possibly relevant variant of the privacy tort." *Nabozny*, 84 F.4th at 736. To qualify as a public disclosure, a communication must "reach[ ], or [be] sure to reach, the public." Restatement § 652D, cmt. a. "The public-disclosure form of the privacy tort protects against the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny." *Nabozny*, 84 F.4th at 736 (citing Restatement § 652D cmt. b ("When . . . intimate details of . . . life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy . . . ."). And here, Facebook and Zigpoll are merely discrete companies that allegedly received information for business purposes. (FAC ¶¶ 39-40 (describing Facebook and Zigpoll as marketing tools). As in *Nabozny*, there is nothing to suggest that anyone at Facebook or Zigpoll ever reviewed or appreciated the combination of Plaintiffs' Facebook IDs and information about videos they purchased—and certainly no allegations that information about Plaintiffs' movie purchases was exposed to the public.

The events leading to the enactment of the VPPA also demonstrate that Congress' concern was over a *public* disclosure, as Judge Bork's video rental history was published in a newspaper article. *See* ECF No. 20, ¶ 18 ("The video store provided the writer with a list of 146 movies. In turn, the writer published an article listing the movies rented by Judge Bork.). That type of public disclosure is absent here. Without a public-exposure component, Plaintiffs' alleged injury is not analogous to the harm at the core of the public-disclosure tort, and this Court consequently lacks subject matter jurisdiction over Plaintiffs' claim.

### 3.    Claims Involving Zigpoll Fail For Additional Reasons.

Plaintiffs lack standing to assert claims concerning Zigpoll for the additional reason that Zigpoll was merely a software tool Defendant used to gather information about Defendant's own customers, exclusively for Defendant's own use. Ex. A, Decl. of Kathy Callahan ("Callahan Decl.") ¶¶ 4-6. Zigpoll's own Terms & Policies provide that Defendant retained "all right, title, and interest" in customer data, and Zigpoll was limited to using the data "solely to the extent necessary to provide the Services to the Customer." Callahan Decl. at Ex. 1, § 3.1. Defendant's use of Zigpoll consequently does not fall within the ordinary meaning of the term "disclosure" at all[1]—and certainly has no "close historical or common-law analogue" that is "traditionally recognized as providing a basis for a lawsuit in American courts." *Ramirez*, 594 U.S. at 424-25.

Moreover, the VPPA expressly permits companies to share information "incident to the ordinary course of business," 18 U.S.C. § 2710(b)(2)(E), including "order fulfillment" and "request processing," 18 U.S.C. § 2710(a)(2). The Senate Report that accompanied the VPPA's passage explained: "This subsection takes into account that video tape service providers may use

---

[1] *See* Black's Law Dictionary (12th ed. 2024) (defining "disclosure" as "[t]he act or process of making known something that was previously unknown; a revelation of facts").

third parties in their business operations . . . ." Senate Rep. No. 100-599, at 14. In *Sterk*, the court held Redbox's provision of customer information to a third party which ran Redbox's customer service call center fell squarely within the ordinary course of business exception as "order fulfilment" or "request processing" and consequently did not violate the VPPA. 770 F.3d 618, 621 & 625-26 (7th Cir. 2014). The Ninth Circuit expressly agreed with *Sterk*'s analysis in *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) and held that disclosures between related corporate entities likewise qualify for the ordinary course of business exception. *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (citing S. Rep. No. 100-599 at 14 (1988)). Here, Defendant used Zigpoll exclusively to conduct polls and surveys when a customer placed an order and prior to fulfillment of that order—putting this usage squarely within the ordinary course of business exclusion. Callahan Decl. ¶ 3. In other words, not only is there no close common law analog for claims based on sharing information with Zigpoll, but Congress expressly put the sharing of such information outside the VPPA's reach.

If this Court were to find that use of an internet-based software tool developed by a third party could constitute publication of information gathered through the tool, even though the third party lacked ownership or control over the information and was contractually obligated to use the information exclusively to provide services to the owner and controller of the information, then businesses would effectively be forced to develop their own in-house software solutions, use of ubiquitous programs like Microsoft Outlook would suddenly give rise to privacy claims, and decades of case law concerning privacy torts would be thrown out the window. *Spokeo* and *Ramirez* do not permit such a result.

**B.    Alternatively, Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.**

1.    <u>Legal Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

To state a claim under the VPPA, Plaintiffs must allege that Defendant (1) is a video tape service provider ("VTSP"); (2) who knowingly disclosed to any person; (3) personally identifiable information; (4) concerning any consumer. *See* 18 U.S.C. 2710(b)(1). Plaintiffs' allegations fail to state a VPPA claim, and their Complaint should be dismissed because Plaintiffs fail to allege actual damages or that Defendant knowingly disclosed personally identifiable information ("PII"). Additionally, the VPPA violates the First Amendment.

2.    <u>Plaintiffs Fail to Allege Actual Damages.</u>

Under the VPPA, a court may award "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. 2710(c).  When read in context, it is apparent that the language "but not less than liquidated damages in an amount of $2,500" is intended to limit the phrase actual damages. *See FCC v. Airadigm Communications, Inc.*, 616 F.3d 642, 655 (7th Cir. 2010) ("The last antecedent rule provides that '[r]elative and qualifying phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent.'") (quoting J.G. Sutherland, Statutes And Statutory Construction § 267, at 349 (1st ed. 1891)).

In *Doe v. Chao*, 540 U.S. 614 (2004), the Supreme Court interpreted the Privacy Act of 1974, which has language similar to the VPPA that provides for "actual damages sustained by the individual…but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)(A)). The Court held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; *see also Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) ("Obtaining monetary damages under § 552a(g)(4) requires proof of 'actual damages.'"). The Court's explained that its interpretation of the damages language turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision. Indeed, as the Privacy Act illustrates, Congress was deliberate in its use of "damages," specifying when "damages" are available (*see* 5 U.S.C. § 552a(g)(4)(A ) versus "fines" (*see* 5 U.S.C. § 552a(i)(1)). To read the VPPA as permitting an award of $2,500 in the absence of actual damages requires substituting the conjunction "or" in the place of the phrase "but not less than," *United States v. Palomares*, 52 F.4th 640 (5th Cir. 2022) ("'Or' is disjunctive.") (citing *Conjunctive/disjunctive canon*, Black's Law Dictionary (10th ed. 2014)), is at odds with the plain language.

Here, Plaintiffs have not alleged any actual damages that can open the door to the VPPA's statutory minimum damages. The phrase "actual damages" is not defined in the VPPA, but other circuits have interpreted "actual damages" as permitting "recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin*, 572 F.3d at 872-73. The *Black's Law Dictionary* definition from the time the VPPA was enacted further supports this conclusion. *See United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (explaining that courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted," which can be

determined "by looking at dictionaries in existence around the time of enactment"). The applicable edition of *Black's Law Dictionary* defines "actual damages" as follows: "Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'" *Damages*, *Black's Law Dictionary* (5th ed. 1979). The Complaint alleges nothing more than mere sharing of Plaintiffs' information, which is a non-quantifiable injury, and thus, does not satisfy the "actual damages" requirement. (*see* ECF No. 2, ¶¶ 10, 28, 39, 47); *see also Fanin*, 572 F.3d at 870, 875 (holding that plaintiffs who names, social security numbers, birth dates, and healthcare files were contained on a stolen hard drive could not recover statutory damages under the Privacy Act of 1974 because they failed to show any pecuniary loss). Thus, Plaintiffs are not entitled to the statutory minimum damages, and their Complaint fails to state a claim upon which relief can be granted.

### 3. Plaintiffs Do Not—And Cannot—Allege That Defendant Knowingly Disclosed PII In Violation Of The VPPA With Respect to Facebook.

The VPPA states that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179.

### a)    **The FID Is Not PII.**

The most basic requirement of a VPPA claim is disclosure of "the kind of information that would *readily permit an ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). Plaintiffs' Complaint alleges the disclosure is their Facebook ID ("FID"), a sequence of numbers ECF No. 20, ¶ 42, Fig. 1 (identifying "c_user=1000485"). That, on its face, is not "information that would *readily permit an ordinary person* to identify a specific individual's video-watching behavior" without further steps or attempts to link information and is, therefore, not covered by the VPPA. Plaintiffs themselves admit that the FID alone is insufficient to identify them—someone would have to take additional steps to first review computer code to locate the c_user FID, open an internet browser, append the c_user FID to facebook.com/[FID], and then attempt to identify a person based on information available on the resulting profile page. *Id.* ¶ 47. Moreover, no Plaintiff alleges that his Facebook account contains their name. *See id.* ¶¶ 12-14 (alleging that each Plaintiff is an active user of Facebook, but failing to allege that their Facebook contains any personally identifying information).

The FID is merely a static digital identifier which is not PII.[2] The VPPA "protects personally identifiable information that *identifies a specific person* and *ties that person to particular videos that the person watched.*" *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285 (quoting *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr.

---

[2] The *Nickelodeon* Court noted that "[n]umerous district courts have grappled with the question of whether the Video Privacy Protection Act applies to static digital identifiers" and that "[m]ost have followed the rule adopted in *In re Hulu Privacy Litigation*" wherein "[t]he court [] concluded that static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information' under the Act, at least by themselves." 827 F.3d at 283 (collecting cases holding the same including *Robinson*, 152 F. Supp. 3d at 182–83; *Eichenberger v. ESPN, Inc.*, No. 14–cv–463 (TSZ), 2015 WL 7252985, at *4–5 (W.D. Wash. May 7, 2015); *Ellis*, 2014 WL 5023535, at *3.

28, 2014) (emphasis added)).[3] Static digital identifiers, as defined in *Ellis v. Cartoon Network, Inc.* 803 F.3d 1251, 1257 (11th Cir. 2015), include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 282, n.124 (citing *Ellis*). These random strings of numbers, when viewed by an ordinary person, do not identify who that person is. Rather, "[t]o an average person, an IP address or ***a digital code in a cookie file*** *would likely be of little help in trying to identify an actual person.*" *In re Nickelodeon*, 827 F.3d at 283 (emphasis added). Although some courts have since held that an FID is PII because it can be plugged into a Facebook URL and PII *may* be found on the resulting Facebook profile, this multi-step investigative process does not make the FID personally identifiable information, as explained by the *Nickelodeon* court.

*In re Nickelodeon* involved plaintiff's IP address, a user's browser and operating system settings, and most importantly, *a computing device's unique device identifier. Id.* at 281-82. The court explicitly held that "the expansion of privacy laws since the Video Privacy Protection Act's passage demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id.* at 286. And unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," "[t]he Video Privacy Protection Act…does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies. The meaning of that phrase in the Act is, it would appear, more static." *Id.* Further, and more importantly, *In re Nickelodeon* explained Congress's subsequent amendment of

---

[3] *See also Robinson,* 152 F. Supp. 3d at 182 ("the most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), ***which must itself do the identifying*** that is relevant for purposes of the VPPA (literally, 'information which identifies')—***not information disclosed by a provider, plus other pieces of information*** collected elsewhere by non-defendant third parties.") (emphasis added).

the VPPA in 2013 demonstrates Congress was "was keenly aware of how technological changes have affected the original Act" and "[d]espite this recognition, Congress did not update the definition of personally identifiable information in the statute." *Id*. "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of Internet Protocol (IP) Addresses and account identifiers to the definition of [personally identifiable information]." *Id*. at 288.

This Court should follow *In re Nickelodeon* to hold the FID that Plaintiffs allege was disclosed is ***not*** PII because it is merely a static digital identifier automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to the public at large. *See id*. at 286. Indeed, "[t]he classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim."

### b) Even if the FID Was PII, Plaintiffs Allege Their Own Browser Disclosed the Information, Not Defendant

Plaintiffs allege Defendant "has systematically collected and shared personal information of consumers on its websites through the use of code that includes cookies and the 'Facebook Pixel.'" ECF No. 20, ¶ 5. Plaintiff alleges that "if a consumer with a Facebook account uses the same browser to request video material on Shout's websites, the consumer's FID and the name of the video material are simultaneously disclosed to Facebook, as depicted in [Figure 1]." *Id.* ¶ 42, fig. 1. Figure 1[4] shows the information purportedly disclosed. *Id.* This figure demonstrates, and Plaintiffs concede, that the cookie "***is sent from the device*** to Facebook . . . ." *Id.* (emphasis added).

---

[4] A larger version is available at ECF No. 20, Ex. A.

In other words, Plaintiffs allege that that the c_user cookie *on their own devices* transmits their FID to Facebook when they visit a website using the Pixel.

Plaintiffs' Figure 1 aligns with how cookies generally work. For example, *In re Facebook, Inc. Internet Tracking Litig.* explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user" and "continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020); *see also In re Meta Pixel Healthcare Litig*., No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are 'small pieces of text used to store information on web browsers.'"); *Mount v. PulsePoint, Inc*., No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016) ("Persistent cookies, commonly called 'tracking cookies,' are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website."). The dictionary defines "cookie" as "a small file or part of a file ***stored on a World Wide Web user's computer***, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." (*See* "Cookie" (df. 3) (https://www.merriam-webster.com/dictionary/cookie) (last visited March 12, 2025) (emphasis added).

Plaintiffs' own allegations, the dictionary definition of a "cookie," and case law on third-party Facebook cookies make clear that Plaintiffs' FID is stored ***on Plaintiffs' computers***—not by Defendant—and subsequently transmitted to Facebook ***by Plaintiffs' own browsers***. Therefore, even if this Court were to find that FIDs are PII (which they are not), Defendant is not the one that

transmits the FID to Facebook. The VPPA only applies to an entity that "discloses" PII, 18 U.S.C. § 2710(b)(1), and Defendant cannot possibly "disclose" something that it never possesses in the first place.

Plaintiffs fail to allege Defendant discloses any other PII, such as their names, to Facebook. Rather, their claims concerning Facebook rely solely on the alleged transmission of their FID which is transmitted by Plaintiffs' own browsers. Because Plaintiffs' specific allegations support that Plaintiffs' FID is transmitted by their own browser, not by Defendant, and because they do not allege that Defendant discloses any other PII to Facebook, Plaintiffs fail to allege Defendant discloses PII to Facebook.

### c)       Plaintiffs Have Not Alleged A "Knowing" Disclosure.

Plaintiffs also do not allege that Defendant *knew* whether they, or any other user, had an FID, much less what those FIDs were. Therefore, Plaintiffs do not plausibly allege Defendant *knowingly* disclosed her FID, let alone her PII, to Facebook.

### 4.       The VPPA Violates The First Amendment.

The Complaint should be dismissed because it seeks to enforce a statute that violates the First Amendment. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Laws like the VPPA that "burden" speech are unconstitutional unless they satisfy First Amendment scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (holding that an FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience). The VPPA imposes severe speech restrictions that cannot be justified.

### a)    The VPPA Imposes Suspect Burdens.

To begin, the VPPA triggers First Amendment scrutiny because it places speaker- and content-based restrictions on the dissemination of information. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *Sorrell*, 564 U.S. at 567. The First Amendment "[p]rohibit[s] restrictions [that] distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *see also Reed*, 576 U.S. at 170. Further, content-based restrictions "are presumptively unconstitutional. . . ." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

A burden is speaker-based if it applies only to some classes of speakers and content-based if its application turns on the message of regulated speech. *Sorrell,* 564 U.S. at 567. Here, the VPPA applies only to a "video tape service provider" and prohibits only the disclosure of "personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Its dictates are speaker-based because they "target[s] those speakers" within their gateway definitions and no others, *Sorrell*, 564 U.S. at 565, and content-based because its applicability "depend[s] entirely on the communicative content of the" disclosures. *Reed*, 576 U.S. at 164. The Supreme Court in *Sorrell* held that a Vermont law restricting "the sale, disclosure, and use of prescriber-identifying information," which pharmacies receive when processing prescriptions, was both content- and speaker-based and triggered "heightened scrutiny." 564 U.S. at 571. The VPPA likewise forbids specified speakers from disclosing information that can be identified only by its content. First Amendment scrutiny applies.

### b)    The VPPA Fails First Amendment Scrutiny.

First Amendment scrutiny is not satisfied. As an initial matter, strict scrutiny is the applicable standard. *See Reed*, 576 U.S. at 163, 171. The VPPA must therefore be "narrowly tailored to serve compelling state interests." *Id*. Although *Sorrell* declined to decide whether strict scrutiny or the intermediate standard under *Central Hudson Gas & Elec. Corp. v. Pub. Serv.*

*Comm'n of New York*, 447 U.S. 557 (1980), applies to content- and speaker-based commercial speech, 564 U.S. at 571, the Court more recently applied strict scrutiny to a ban on robocalls, reasoning that, under its "precedents, a 'law that is content based' is 'subject to strict scrutiny.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) (quoting *Reed*, 576 U.S. at 165).

But the VPPA cannot even satisfy intermediate scrutiny, as the law is not "narrowly tailored to serve a significant governmental interest." *GEFT Outdoor, L.L.C. v. City of Westfield*, 491 F. Supp. 3d 387, 407 (S.D. Ind. 2020) (quoting *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000)). And a court "need not decide whether strict scrutiny applies," if a law does not survive constitutional scrutiny under either standard. *See Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017). That is the case here.

For example, under an intermediate scrutiny "commercial speech inquiry" it must be shown "at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 572. This test is often expressed in four inquiries: (1) whether the speech at issue concerns "lawful activity" and is not "misleading," (2) whether the government interest in burdening speech is "substantial," (3) whether "the regulation directly advances the asserted government interest," and (4) whether the regulation is more extensive than is necessary to serve that interest. *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859 (N.D. Ill. 2022) (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002)). The VPPA fails each inquiry.

First, it does not prevent misleading speech or address illegal businesses.

Second, no substantial interest supports the severe speech prohibitions. "[T]he government cannot satisfy the second prong of the *Central Hudson* test by merely asserting a broad interest in

privacy," but must also "specify the particular notion of privacy and interest served" and demonstrate "that the state has considered the proper balancing of the benefits and harms of privacy." *U.S. West*, 182 F.3d at 1234-35. Congress's record for the VPPA specified that the statute protects the notion of privacy defined by the First and Fourth Amendments. S. Rep. No. 100-599, at 4-5 (1988), *as re-printed in* 1988 U.S.C.C.A.N. 4342-4. But both Amendments constrain only state action. *See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015); *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 574 (N.D. Cal. 2019), *aff'd*, 24 F.4th 1287 (9th Cir. 2022); *Wooten v. La Salle Corr.*, No. 7:22-CV-000148 (WLS), 2024 WL 4132331, *6 (M.D. Ga. Sept. 10, 2024). So the VPPA, which burdens private businesses, does not "extend" their rights, S. Rep. No. 100-599 at 2. And the choice to prohibit private speech in the name of "intellectual freedom," *id.* at 4, makes little sense.

The legislative history also cites an incident "when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store" and one other incident where "the attorney for a woman in a child custody proceeding made an informal request for the records of every film rented by her husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5-6. But simply reciting two incidents—out of innumerable video rentals nationwide—does not "show that the dissemination of the information desired to be kept private would inflict specific and significant harm on individuals." *U.S. West*, 182 F.3d at 1235. In neither incident did any harm arise. Judge Bork's Supreme Court nomination failed because of his judicial philosophy, not his video rentals, and there is no evidence that the attorney in the custody proceeding obtained the film records.[5] Simply put, the legislative history cites not one incident of harm arising from disclosure of video

---

[5] Given substantial amounts of private information are exchanged daily in litigation discovery, it is hard to see what a litigation incident could say about an important privacy interest.

rentals. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (explaining that the burden "is not satisfied by mere speculation or conjecture") (quotation marks omitted).

Third, even if a privacy interest were sufficient, the VPPA does not "directly advance[]" it. *Sorrell*, 564 U.S. at 572. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Id.* The VPPA is unconstitutionally underinclusive. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999). "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994) (footnote omitted). Underinclusive laws present "risks of viewpoint and content discrimination," and "[t]hey may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 52.

The VPPA protects privacy in the most selective and irrational of ways. It protects only "video" purchases, rentals, or deliveries, 18 U.S.C. § 2710(a)(3), but not books, magazines, music, and pictures. "The failure to prohibit the disclosure of" purchases of such materials "makes no rational sense if the Government's true aim is to" protect intellectual privacy or guard against embarrassment from public disclosure of information people consume at home. *Rubin*, 514 U.S. at 488. Under the statute, renting *Lassie* activates fulsome statutory penalties if that rental is disclosed, but books, magazines, and photographs with sexual content (or any content) receive no protection. Likewise, because the statutes protect only "prerecorded" materials, 18 U.S.C. § 2710(a)(4), someone who watches livestreamed video content (no matter how embarrassing) receives none of the rights provided to those who watch prerecorded content (no matter how innocuous). The *same* video content will be unprotected on a first, live showing but may be protected on later showings. The VPPA is also selective in its application to some businesses, but

not others. The statute applies to a video obtained from a business having "a focus" of video rental (*e.g.*, Netflix) but not to the *same video* from a business without that focus (*e.g.*, Target). *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). And it selectively reaches renters, purchasers, and subscribers, but no one else. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). This burdens some speakers, but not others, for no reason whatsoever.

Finally, Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity such as by applying directives to all content for which an intellectual-privacy interest might reasonably attach, and all suppliers of that content. Instead, Congress picked out the case of a single judicial nominee, drew up a law to prevent *that* case from reoccurring, and protected practically nothing else. This is so irrational that the VPPA will not even do that: if all internet images a future judicial nominee ever viewed are made public, the statutes invoked here will say nothing about that—even though that would be no different from the Bork incident that inspired the VPPA. That is no way to protect privacy, and it does not justify severe speech burdens.

## III.  CONCLUSION

For the foregoing reasons, Shout! Factory, LLC respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint, with prejudice.

Dated: March 12, 2025                                      Respectfully submitted,

                                                          BAKER & HOSTETLER LLP

                                                          By:    */s/ Bonnie Keane DelGobbo*
                                                                 Joel C. Griswold (6277574)
                                                                 Bonnie Keane DelGobbo (6309394)
                                                                 Katharine H. Walton (6339805)
                                                                 **BAKER & HOSTETLER LLP**
                                                                 One North Wacker Drive, Suite 3700

Chicago, IL  60606-2859
Telephone:        312.416.6200
Facsimile:         312.416.6201
jcgrisold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Shout! Factory, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 12, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record. I further certify that a true and correct copy of the foregoing document was served via certified mail on the following:

Pamela Bondi
**Attorney General for the United States**
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001


*/s/ Bonnie Keane DelGobbo*