# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SAM WELBEL, MICHAEL ARCHER, and
DYLAN MACALUSO, individually and on behalf
of all others similarly situated,

Plaintiffs,

v.

SHOUT! FACTORY, LLC,

Defendant.

Case No. 1:24-cv-06426

Hon. Thomas M. Durkin

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

LEGAL AND FACTUAL BACKGROUND ............................................................... 1

    A.   *The Video Privacy Protection Act* ............................................. 1

    B.   *Factual Background* ....................................................................... 2

LEGAL STANDARD .................................................................................................. 3

ARGUMENT ................................................................................................................ 4

I.    **Plaintiffs' claims should not be dismissed pursuant to Rule 12(b)(1).** ............................ 4

    A.   *Plaintiffs allege a concrete privacy injury.* ....................................... 4

    B.   *The FDCPA caselaw that Defendant relies upon is inapplicable.* ............................ 6

    C.   *The alleged disclosures to Zigpoll also violate the VPPA.* ........................... 7

II.    **Plaintiffs' claims should not be dismissed pursuant to Rule 12(b)(6).** ....................... 9

    A.   *Plaintiffs allege actual damages within the meaning of the VPPA.* ........................... 9

    B.   *Plaintiffs alleged that Defendant knowingly disclosed their Personally Identifiable Information to Meta.* ......................................... 11

        i.   Facebook IDs are "Personally Identifiable Information." ........................... 12

        ii.   Defendant disclosed Plaintiffs' "Personally Identifiable Information." .................. 14

        iii.   Plaintiffs allege knowing disclosures. ............................................ 16

    C.   *The VPPA does not violate the First Amendment.* ................................... 16

        i.   Courts have universally rejected First Amendment challenges to the VPPA. .......... 17

        ii.   Intermediate scrutiny applies because the VPPA regulates commercial speech. ..... 18

        iii.   The VPPA survives intermediate scrutiny. ....................................... 19

CONCLUSION ........................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Cases**

*AnchorBank, FSB v. Hofer*,
   649 F.3d 610 (7th Cir. 2011) ...................................................... 4

*Austin-Spearman v. AMC Network Entm't LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015)............................................. 5

*Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*,
   111 F.3d 1322 (7th Cir.1997) ....................................................... 7

*Belozerov v. Gannett Co.*,
   646 F.Supp.3d 310 (D. Mass. 2022) .......................................... 13, 15, 16

*Boelter v. Advance Magazine Publishers Inc.*,
   210 F. Supp. 3d 579 (S.D.N.Y. 2016)....................................... 17, 20

*Boelter v. Hearst Commc'ns, Inc.* ("*Hearst II*"),
   269 F. Supp. 3d 172 (S.D.N.Y. 2017)....................................... 18, 19

*Burdette v. FuboTV Inc.*,
   2024 WL 2831466 (N.D. Ill. June 4, 2024) .................................. 6

*Campos v. Tubi*, Inc.,
   716 F. Supp. 3d 623 (N.D. Ill. 2024) ........................................... 6

*Cantu v. Tapestry, Inc.*,
   2023 WL 4440662 (S.D. Cal. July 10, 2023) ............................ 5, 6, 7, 8

*Carter v. Scripps Networks, LLC*,
   670 F. Supp. 3d 90 (S.D.N.Y. 2023)............................................ 6

*Center for Dermatology & Skin Cancer, Ltd. v. Burwell*,
   770 F.3d 586 (7th Cir. 2014) ....................................................... 3

*Collins v. Toledo Blade*,
   720 F. Supp. 3d 543 (N.D. Ohio 2024)...................................... 4, 9

*Craftwood II, Inc. v. Generac Power Systems, Inc.*,
   920 F.3d 479 (7th Cir. 2019) ....................................................... 3

*Fitzpatrick v. IRS*,
   665 F.2d 327 (11th Cir.1982) ..................................................... 11

*Florence v. Ord. Express, Inc.*,
  674 F. Supp. 3d 472 (N.D. Ill. 2023) ................................................................. 7

*Lee v. Springer Nature Am., Inc.*,
  2025 WL 692152 (S.D.N.Y. Mar. 4, 2025) ......................................................... 6

*Nabozny v. Optio Solutions LLC*,
  84 F.4th 731 (7th Cir. 2023) .............................................................................. 6

*Pileggi v. Wash. Newspaper Publ. Co., LLC*,
  2024 WL 324121 (D.D.C. Jan. 29, 2024) .......................................................... 6

*R J Reynolds Tobacco Co. v. Food & Drug Admin.*,
  96 F.4th 863 (5th Cir. 2024) ............................................................................ 18

*Salazar v. Paramount Glob.*,
  2023 WL 4611819 (M.D. Tenn. July 18, 2023) ............................................ 5, 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 300 (2016) ....................................................................................... 4, 5

*Sterk v. RedBox Automated Retail, LLC*,
  770 F.3d 618 (7th Cir. 2014) ............................................................................. 7

*Trans Union Corp. v. F.T.C.*,
  245 F.3d 809 (D.C. Cir. 2001) ........................................................................ 19

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................. 4, 5, 6

## Statutes

18 U.S.C. § 2724 .................................................................................................... 11

5 U.S.C. § 552 ....................................................................................................... 10

Mich. Compl. Laws § 445.1711 ............................................................................ 17

## Constitutional Provisions

First Amendment to the Constitution of the United States .......................................... 16

This case is about Defendant Shout! Factory, LLC's systematic and routine violation of consumers' privacy rights as established by the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). By installing tracking technologies on its website, Defendant has regularly disclosed its consumers' "personally identifiable information" to Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta"), and Argonautic Labs LLC ("Zigpoll"). *See* 18 U.S.C. § 2710(b)(1); ECF No. 20 at ¶¶ 1-8. Defendant's Motion to Dismiss should be denied.

## LEGAL AND FACTUAL BACKGROUND

### A.    *The Video Privacy Protection Act*

Congress passed the VPPA in 1988 and President Reagan signed it into law that same year. The law is designed to protect the privacy interests of consumers who request or obtain video materials from commercial providers of such services. Congress enacted the VPPA in response to a video store's disclosure of then-Supreme Court-nominee Robert Bork's video rental history. *See generally In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). It defines a "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4).

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]." 18 U.S.C. § 2710(b). Several

1

exceptions to violations of the law are also enumerated.[1] None of the exceptions are relied upon as the basis for dismissal by Defendant's briefing currently before this Court. *See* ECF No. 41.

### B.   Factual Background

Plaintiffs' Complaint alleges that Defendant is a "video tape service provider." ECF No. 20, ¶¶ 2, 3, 33, 34. It details how Defendant operates the websites www.shoutfactory.com and www.ghiblicollection.com (the "Websites"). *Id.* at ¶ 15. The Complaint alleges that "an integral component of Shout's business model is the sale of movies, TV shows, and other video materials. . . ." *Id.* at ¶ 34; see also *id.* at ¶ 15.

The Complaint alleges that Defendant disclosed Plaintiffs' "personally identifiable information." *See, e.g.*, ECF No. 20, ¶¶ 42-45. It states that Plaintiffs each have Facebook accounts. *Id.* at ¶¶ 12-14. It explains how Meta assigns each person with a Facebook account a unique, numerical Facebook ID. *Id.* at ¶ 28. These Facebook IDs are personally identifying, according to the Complaint, because they are each indexed to an individual's Facebook account, which includes the individual's name and other personally identifying information. *Id.* at ¶¶ 29-31, 47. When a person with a Facebook account purchases a video from Defendant's Websites, the Websites send the person's Facebook ID to Meta along with other information about the individual's activity on the page, including the page's URL, which identifies the video on the page. *Id.* at ¶¶ 42-43.

Defendant similarly uses the "ZigPoll Widget" to disclose its clients' personally identifiable information. The Complaint explains that Defendant has installed the "Zigpoll

---

[1] The exceptions include: (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"; and (6) disclosure pursuant to a court order in a civil proceeding. *Id.* § 2710(b)(2).

Widget" on the Websites and configured it to disclose its customers' personally identifiable information to Zigpoll. *See, e.g.*, ECF No. 20, ¶¶ 36, 38, 40. Defendant discloses its customers' names, email addresses, and the title of the prerecorded video materials they purchased to Zigpoll during the checkout process on the Websites. *Id.* at ¶¶ 45-46.

The Complaint alleges that Defendant knowingly installed the Meta Pixel and Zigpoll Widget and used them to disclose consumers' identities, along with the videos requested or obtained, to the respective developers of those tracking pixels. *See, e.g.*, ECF No. 20 at ¶¶ 36-47.

## LEGAL STANDARD

Motions dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). "In the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff[.]" *Id.* "When subject-matter jurisdiction—which is to say, the power to hear and decide the case at all—is at stake, a district judge may resolve factual disputes and make any findings necessary to determine the court's adjudicatory competence." *Craftwood II, Inc. v. Generac Power Systems, Inc.*, 920 F.3d 479, 481 (7th Cir. 2019).

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in

the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

## ARGUMENT

### I. Plaintiffs' claims should not be dismissed pursuant to Rule 12(b)(1).

#### A. Plaintiffs allege a concrete privacy injury.

Tellingly, Defendant failed to identify a single case—despite the abundance of VPPA caselaw—holding that consumers lack Article III standing to challenge unauthorized disclosures under the VPPA. *See* ECF No. 41 at 1-7. Defendant is asking for a decision that would depart from "'every federal circuit court that has considered the issue.'" *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 549 (N.D. Ohio 2024) (quoting *Feldman v. Star Tribune Media Co. LLC*, 659 F. Supp. 3d 1006, 1015 (D. Minn. 2023)). Defendant's argument is premised on the idea that *Spokeo* and *TransUnion* fundamentally change the analysis. *See* ECF No. 41 at 1-7; *Spokeo, Inc. v. Robins*, 578 U.S. 300 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). However, years have passed since the Supreme Court's decisions in *Spokeo* (2016) and *TransUnion* (2021), and lower courts consistently reject arguments that either case dictates a different outcome. Plaintiffs have Article III standing because the alleged VPPA violations qualify as injuries-in-fact.

To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Because Defendant only

challenges the "injury-in-fact" element, only that element is addressed herein.

Article III merely requires that a plaintiff's injury be "concrete—that is, real, and not abstract." *TransUnion*, 594 U.S. at 424 (internal quotation marks omitted). Intangible harms, especially those "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" can qualify as "concrete." *Id.* at 425. The Supreme Court even identified privacy harms as an example of the type of intangible harm that qualifies as a concrete injury under Article III:

> Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, *disclosure of private information, and intrusion upon seclusion*.

*See id.* (emphasis added; citations omitted). Before *TransUnion*, courts consistently found that plaintiffs alleging VPPA claims had Article III standing because a valid VPPA claim includes the deprivation of their privacy rights.[2] And, since *TransUnion*, courts have consistently reached the same conclusion.[3] The VPPA protects long-recognized privacy rights. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Historical practice confirms that understanding. Violations of the right to privacy have long been actionable at common law."). Defendant cited no cases abrogating pre-*TransUnion* decisions. ECF No. 41 at 1–7. Plaintiffs with VPPA claims have standing because the unlawful disclosure of plaintiffs' information to third parties "bears a close

---

[2] *See Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666–67 (S.D.N.Y. 2015).

[3] *See, e.g., Cantu v. Tapestry, Inc.*, No. 22-cv-1974, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023) (explaining that "[v]iolations of the VPPA are not mere 'procedural violations[.]'" (quoting *Spokeo*, 578 U.S. at 342)); *Salazar v. Paramount Glob.*, No. 22-cv-756, 2023 WL 4611819, at *7 (M.D. Tenn. July 18, 2023) ("Although Defendant attempts to make hay out of the Supreme Court's decision in *TransUnion* ... the Supreme Court concluded that plaintiffs whose information was disclosed to a third party suffered a concrete harm[.]" (citation omitted)); *Feldman*, 659 F. Supp. 3d at 1014–16 (finding "this common law tradition" of intrusion upon seclusion "bears a close relationship to [VPPA] injury allegations").

relationship to harms traditionally recognized as providing a basis for lawsuits in American courts, including the common-law tort of intrusion upon seclusion." *Cantu*, 2023 WL 4440662, at *4. This makes sense because the VPPA codified a preexisting privacy right. *See Eichenberger*, 876 F.3d at 983. Caselaw supporting Article III standing in VPPA cases is so uniform that Defendants often forego this Rule 12(b)(1) challenge. *See, e.g.*, *Campos v. Tubi*, Inc., 716 F. Supp. 3d 623, 626 (N.D. Ill. 2024); *Burdette v. FuboTV Inc.*, 2024 WL 2831466, at *2 (N.D. Ill. June 4, 2024).

Plaintiffs' VPPA allegations may be "intangible," but they qualify as concrete injuries. ECF No. 20, ¶¶ 5, 44-47, 65-66; *see Pileggi v. Wash. Newspaper Publ. Co., LLC,* No. 23-cv-0345, 2024 WL 324121, at *5 (D.D.C. Jan. 29, 2024) (holding the unlawful disclosure of consumers' information to a third party in violation of VPPA bears close relationship to intrusion upon seclusion, "which subjects [a defendant] to liability for invasion of privacy") (citations omitted). *TransUnion* made clear that plaintiffs' asserted harm merely needs a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts"—an "exact duplicate" is not required. *TransUnion*, 594 U.S. at 433. As courts have recognized, VPPA privacy harms closely relate to the torts of intrusion upon seclusion, disclosure of private facts, and the invasion of privacy harm generally.[4] Plaintiffs allege a violation of their intellectual privacy and not a mere statutory violation. *See* ECF No. 20, ¶¶ 27, 33–47.

### B.      The FDCPA caselaw that Defendant relies upon is inapplicable.

Defendant's reliance on *Nabozny v. Optio Solutions LLC* is misplaced. 84 F.4th 731 (7th Cir. 2023); ECF No. 41 at 3-6. *Nabozny* involved Fair Debt Collection Practices Act ("FDCPA") claims based on a letter vendor' use—not the disclosure of video requests or purchases for

---

[4] *See, e.g.*, *Feldman*, 659 F. Supp. 3d 1006, 1014–16 (D. Minn. 2023) (intrusion upon seclusion); *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95 (S.D.N.Y. 2023) (disclosure of private information); *Lee v. Springer Nature Am., Inc.*, No. 24-cv-4493, 2025 WL 692152, at *6 (S.D.N.Y. Mar. 4, 2025) (standing where a defendant disclosed personally identifiable information to an unauthorized third party).

marketing purposes. *Nabozny*, 84 F.4th 731. The FDCPA protects "consumers from abusive, deceptive, and unfair debt collection practices." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir.1997). By contrast, the VPPA specifically protects a consumer's intellectual privacy. Courts in the Seventh Circuit, including *Sterk*, have long held that such disclosure constitutes a cognizable privacy harm.[5] The VPPA differs from consumer protection statutes, like the FDCPA, because a violation is concrete "for Article III standing … when a consumer alleges that his data has been impermissibly disclosed in violation of the Act." *Cantu*, 2023 WL 4440662, at *4. The unlawful disclosure itself constitutes an injury-in-fact. *See Feldman*, 659 F. Supp. 3d at 1015 (explaining that "the common law tradition [cares] about the offensive intrusion, not whether the intrusion was accompanied by review or perhaps use by a third party."). There is no requirement for additional publication or tangible harm.

Finally, Defendant's reference to the legislative impetus of the statute highlights its misunderstanding. *See* ECF No. 41 at 6. Congress's ire was not directed at the journalist who published an article about Judge Bork; instead, it was focused on businesses disclosing information that would violate Americans' intellectual privacy. ECF No. 20, ¶¶ 18–26. The harm attaches at the time of disclosure—businesses that deal in video goods and services are prohibited from violating individuals' intellectual privacy, so liability attaches at the time goods or services are requested or obtained. *See* 18 U.S.C. § 2710 (a)(3). The fact that later actions could compound the privacy harm only underscores the importance of preventing the initial violation.

## C.    *The alleged disclosures to Zigpoll also violate the VPPA.*

Defendant's arguments regarding Zigpoll are merits-based, not jurisdictional, and therefore

---

[5] *See, e.g.*, *Florence v. Ord. Express, Inc.*, 674 F. Supp. 3d 472, 480-81 (N.D. Ill. 2023) (collecting cases); *Sterk v. RedBox Automated Retail, LLC*, 770 F.3d 618, 623-35 (7th Cir. 2014).

irrelevant to Article III standing. Plaintiffs allege that Defendant disclosed their Personally Identifiable Information—including details of their video purchases—to a third party, Zigpoll. *See* ECF No. 20, ¶¶ 44–47, 66. As alleged in the Complaint, this disclosure occurred through embedded tracking code on the purchase confirmation page, which transmitted both identity and video-specific data simultaneously to Zigpoll at the moment of checkout, regardless of whether the user engaged with a survey. *See* ECF No. 20, ¶¶ 44–47, 66. Such unauthorized disclosure of private viewing information is a classic privacy harm, long recognized as sufficient to establish standing. Whether the disclosure fits within an exception or whether Zigpoll qualifies as a third party under the statute are merits questions, not jurisdictional ones. *See Salazar v. Paramount Glob.*, No. 22-cv-756, 2023 WL 4611819, at *6–7 (M.D. Tenn. July 18, 2023). A rule 12(b)(1) motion is not the proper venue for such a merits challenge.

Defendant's attempt to relabel Zigpoll as a customer service tool or suggest that no meaningful disclosure occurred misses the mark. ECF No. 41 at 6–7. Zigpoll is not processing returns or fulfilling orders—it is a third-party marketing platform receiving video-specific transaction data. ECF No. 20, ¶ 40. Those facts make this case about unauthorized disclosure, not customer support. Further, Defendant's suggestion that Zigpoll is no different from Microsoft Outlook borders on frivolous. Unlike email services used for direct communication, Zigpoll is a third-party marketing platform that independently collects and stores data about consumers' video purchases—precisely the kind of unauthorized disclosure the VPPA prohibits. *See* 18 U.S.C. § 2710. Ultimately, discovery is needed to determine the exact parameters of Defendant's disclosures to Zigpoll and Zigpoll's business functions. *See, e.g.*, *Cantu*, 2023 WL 4440662, at *7. "Terms and Policies" do not allow companies to violate individuals' privacy. ECF No. 41 at 6. Any arguments about whether Zigpoll falls under an "ordinary course of business exception" are not ripe. *Id.* Shout

cannot claim that disclosures were necessary to operate its business because this privacy statute does not protect marketing activities. *See Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 556 (N.D. Ohio 2024). "Ordinary course of business" is narrowly defined and limited to activities like debt collection, order fulfillment, request processing, and ownership transfers. 18 U.S.C. § 2710(a)(2).

## II. Plaintiffs' claims should not be dismissed pursuant to Rule 12(b)(6).

Plaintiffs have stated a claim by plausibly alleging each element of a VPPA violation. Defendant presents three arguments under Federal Rule of Civil Procedure 12(b)(6), each of which runs contrary to the weight of caselaw and the allegations in the Complaint.

### A. *Plaintiffs allege actual damages within the meaning of the VPPA.*

Defendant's argument that the Complaint fails to state a claim because it does not allege actual damages fails for at least three separate reasons. First, actual damages are not an element of a VPPA claim. A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *See Mollett*, 795 F.3d at 1066. Those elements are drawn from the statutory text of the section of the VPPA which creates the cause of action, 18 U.S.C. § 2710(b). It provides: "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]." 18 U.S.C. § 2710(b). No part of this section requires an allegation of actual damages.[6] *See id*. For this reason

---

[6] Defendant's own recitation of the elements of a VPPA claim does not include an element concerning any relief requested, let alone any element specifically requiring actual damages. *See* ECF No. 41 at 8 ("To state a claim under the VPPA, plaintiffs must allege that defendant (1) is a video tape service provider ("VTSP"); (2) who knowingly disclosed to any person; (3) personally identifiable information ("PII"); (4) concerning any consumer.").

alone, Defendant's argument fails.

Second, several other "remedies" are provided for in the VPPA beyond "actual damages." These include "liquidated damages," "punitive damages," "attorneys fees and other litigation costs," and "equitable relief." 18 U.S.C. § 2710(c)(2). Plaintiffs seek each of those remedies in their Complaint. *See* ECF No. 20 at 15. Even if Plaintiffs are required to seek any specific remedy provided for by the VPPA as an element of their claims, they have done so in spades.

Third, recovering liquidated damages does not require a showing of actual damages. The statute provides for the recovery of "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). As one court recently wrote regarding exact issue, "The problem with [Defendant's] reading of the statute is that the text of the VPPA does not condition recovery on proof of actual damages." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 32 (D. Mass. 2024). In *Saunders*, as here, the defendant relied heavily on *Doe v. Chao*, 540 U.S. 614 (2004) and its construction of the Privacy Act of 1974. *See id.*; ECF No. 41 at 9-10. But the *Saunders* court thoroughly dispatched that comparison:

> The Privacy Act provides that if the United States violates a provision of the statute, it "shall be liable to the individual in an amount equal to the sum of actual damages sustained by the individual as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4). The Court concluded that Doe needed to prove actual damages to prevail on a Privacy Act claim. *Chao*, 540 U.S. at 620, 124 S.Ct. 1204. **But in doing so, it noted that if Congress wished to allow recovery of liquidated damages for violations of the Privacy Act absent actual damages, it could have made the statute read "the Government would be liable to the individual for actual damages 'but in no case . . . less than the sum of $1,000.'"** *Id.* at 623, 124 S.Ct. 1204 (alteration in original). **That is nearly exactly how the VPPA is styled.** *See* 18 U.S.C. § 2710(c)(2)(A) ("The court may award actual damages but not less than liquidated damages in an amount of $2,500.").

711 F. Supp. 3d at 32 (emphasis added). As explained in *Saunders*, *Chao* supports the notion that liquidated damages are separate from actual damages in the VPPA because the phrasing of the

VPPA's provision § 2710(c)(2)(A) parallels that suggested by the Supreme Court in *Chao* regarding how Congress may show that the two are independent. *Id*.

Defendant's reliance on the Eleventh Circuit's opinion in *Fanin v. U.S. Dep't of Veterans Affs.* fails for the same reason. *See* ECF No. 41 at 9-10 (citing 572 F.3d 868, 872 (11th Cir. 2009)). Like *Chao*, the court in *Fanin* construed the Privacy Act of 1974. 572 F.3d at 871. Largely relying on the reasoning of *Chao* and another Eleventh Circuit case construing the Privacy Act, *Fitzpatrick v. IRS*, 665 F.2d 327, 331 (11th Cir.1982), the court found that recovering "actual damages" under the Privacy Act required allegations of pecuniary losses. *Id*. at 872. However, the Eleventh Circuit *itself* has distinguished the "actual damages" language as it appears in the Privacy Act from the type of language used in the VPPA. In *Kehoe v. Fid. Fed. Bank & Tr.*, it examined this issue in the context of the Drivers' Privacy Protection Act (the "DPPA"). 421 F.3d 1209, 1212 (11th Cir. 2005). The DPPA's language is <u>almost</u> <u>identical</u> to that appearing in the VPPA, providing that a "court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b)(1). Distinguishing the DPPA from the Privacy Act, the court found that "actual damages" and "liquidated damages" were "completely different types of damages." 421 F.3d at 1213. Given the nearly identical provisions in the DPPA and the VPPA, the *Kehoe* court's reasoning is equally applicable here.

Defendant does not cite a single case endorsing its position that actual damages are required to recover liquidated damages under the VPPA. Defendant's Motion should be denied.

**B.** **_Plaintiffs alleged that Defendant knowingly disclosed their Personally Identifiable Information to Meta._**

Defendant's second argument under Rule 12(b)(6) contradicts both the allegations in the Complaint and the overwhelming weight of caselaw. Defendant attacks three elements of a VPPA claim. First, it asserts that Plaintiffs have not alleged that Facebook IDs are "personally identifiable

information." *See* ECF No. 41 at 11-13. Second, it asserts that Plaintiffs do not allege that Defendant disclosed their information. *Id.* at 13-15. Third, it contends that Defendant did not "knowingly" disclose Plaintiffs' information. *See id.* at 15. Each of these arguments is routinely turned away by courts considering analogous allegations. The Motion should be denied.

> i. *Facebook IDs are "Personally Identifiable Information."*

Plaintiffs have plausibly alleged that Defendant disclosed their "personally identifiable information" in violation of the VPPA. Against a mountain of caselaw to the contrary, Defendant asserts that Facebook IDs are not "personally identifiable information" under the VPPA.

Defendant's argument runs contrary to both the overwhelming weight of caselaw and the allegations in the Complaint. The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). The Complaint alleges that Defendant disclosed to Meta the Facebook IDs of visitors to its website, and that its disclosure of those Facebook IDs was paired with the names of the prerecorded videos Plaintiffs' purchased from Defendant. *See, e.g.*, ECF No. 20, ¶¶ 42-46. Facebook IDs are personally identifying to Meta because they are indexed to an individual's Meta account, which includes the individual's first and last name, birth date, and gender. *Id.* at ¶¶ 30-31. To the wider public, Facebook IDs are personally identifying because anyone in possession of a Facebook ID can use it to identify a person's Facebook account, which displays their name and other identifying information. *See, e.g.*, *id.* at ¶¶ 29-31.[7] The Complaint alleges that each Plaintiff had an account with Meta, a profile on Meta's internet properties, and a Facebook ID associated with that profile. *Id.* at ¶¶ 12-14. Plaintiffs further

---

[7] Defendant does not contend that the information transmitted by Defendant to Zigpoll is not "personally identifying information." *See* ECF No. 41 at 10-14. That information includes customers' names, email addresses, and the title of the prerecorded video materials they purchased. *Id.* at ¶¶ 45-46.

allege that any "ordinary person" could use this information to identify the person to whom the data corresponds. *See id.* at ¶¶ 4, 29.

Courts have consistently held that Facebook IDs disclosed to Meta in combination with the names of videos requested or obtained by consumers constitute "personally identifiable information" under the VPPA.[8] In fact, several decisions cited by Defendant show that such allegations state a disclosure of personally identifiable information. For example, Defendant cites *Robinson v. Disney Online* in the opening section of its argument on this element. *See* ECF No. 41 at 10 (citing 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015)). In holding that the "anonymized Roku serial number at issue" did not "identify a specific person," the Court in *Robinson* recognized that an individual's Facebook ID was personally identifiable:

> Nor is the information disclosed by Disney equivalent to a Facebook ID. A Facebook user—even one using a nickname—generally is an identified person on a social network platform. A Facebook ID . . . is thus equivalent to a name—it stands in for a specific person, unlike a device identifier.

*Robinson*, 152 F. Supp. at 183. (internal quotations and citations omitted); *see also Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22-cv-6348, 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (noting Robinson's distinction between Facebook IDs and anonymized Roku serial numbers and denying a VPPA defendant's motion to dismiss). One court recently summarized the landscape on this subject, writing that "Courts have ***uniformly*** held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp.

---

[8] *See, e.g., Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1334 (N.D. Ga. 2023) (holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable information) (collecting cases); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) (same); *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023) (same); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024) (same).

3d 150, 159 (S.D.N.Y. 2023) (emphasis added) (collecting cases).

Despite Defendant's heavy reliance on *In re Nickelodeon Consumer Privacy Litigation*, that case did not concern Facebook IDs nor other tracking pixels. *See* ECF No. 41 at 12-13 (citing 827 F.3d 262 (3d Cir. 2016)). Like *Robinson*, *Nickelodeon* indicates that Facebook IDs *are* personally identifying. The *Nickelodean* court wrote: "We note, however, that even a numeric identifier might qualify as personally identifiable information, at least in certain circumstances." 827 F.3d at 289 n.174. It then proceeded to discuss *In re Hulu Privacy Litigation* and its holding that Facebook IDs are personally identifying, using that as an example of a circumstance where numeric identifiers would meet the definition. *Id.* (citing No. C 11–03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)). Similarly, in *Eichenberger v. ESPN, Inc.*, another case cited by Defendant (ECF No. 41 at 11 n.2) the Ninth Circuit wrote that "A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual." 876 F.3d 979, 985 (9th Cir. 2017).

Courts across the country routinely find that the types of allegations present in the Complaint plausibly allege disclosure of personally identifying information. *See, e.g.*, *Feldman* , 659 F. Supp. 3d at 1020–21 (finding that a plaintiff plausibly alleged his personally identifiable information was disclosed because his Facebook profile contained his name, "making it feasible to identify [him] by reference to this information."). The Court should find, consistent with the "uniform[]" holdings of courts nationwide, *see Golden*, 688 F. Supp. 3d at 159, that Facebook IDs and the names of videos obtained or requested constitute personally identifying information within the meaning of the VPPA.

   ii.   *Defendant disclosed Plaintiffs' "Personally Identifiable Information."*

Defendant next argues that Plaintiffs allege that their own web browsers sent their

personally identifiable information to Meta and Zigpoll. This argument is quickly dispelled by reference to the Complaint and authorities evaluating this same argument.

Contrary to Defendant's assertions, the Complaint plainly alleges that Defendant's Websites transmitted Plaintiffs' personally identifiable information to Meta and Zigpoll. These allegations begin in the Complaint's opening paragraphs, which state:

> Shout has systematically collected and shared the personal information of consumers on its website through the use of code that includes cookies and the "Facebook Pixel." Specifically, these website features work together to collect a consumer's personal data, including the FID, name, and/or email address, to track and record a consumer's interaction with Shout's website, and to disclose to Facebook and/or Zigpoll the video(s) purchased and the consumer's identity as a single data point.

ECF No. 20, ¶ 5. Thus, Defendant's contention that the Complaint only alleges that Plaintiffs' own browsers affected the transmissions at issue is plainly incorrect.[9]

Courts considering this same argument routinely deny motions to dismiss. For example, in *Belozerov v. Gannett Co.*, the court wrote that "In its motion to dismiss, Gannett contradicts the alleged facts, contending that Facebook, not defendant, placed the tracking pixel on the USA Today website." 646 F. Supp. 3d 310, 314 (D. Mass. 2022). But the court noted that "Plaintiff alleges throughout the complaint that defendant inserted the code into the USA Today website to transmit users' information to Facebook" and denied the defendant's motion. *Id.*; *see also Czarnionka*, 2022 WL 17069810 at *3 (rejecting defendant's argument that it "did not actually 'disclose' any PII to Facebook because the Pixel is placed into a user's web browser by Facebook and sends information from the user's web browser directly to Facebook . . . ."); *Harris*, 662 F.

---

[9] *See also id.* at ¶ 38 ("In designing its websites, Shout chose to install and configure certain code, referred to as the Facebook Pixel and the Zigpoll Widget, thus making the knowing choice to collect its users' Personally Identifiable Information and disclose that information to Facebook."); ¶ 41 ("Shout's websites host the Facebook Pixel and sends event data to Facebook when users take certain actions, as programed by Shout."); ¶ 44 ("Shout's website hosts the Zigpoll Widget and sends event data to Zigpoll when users take certain actions, as programed by Shout.").

Supp. 3d at 1334 (same).

Defendant cites no authority embracing its theory. Its fleeting caselaw citations merely explain how internet cookies function on a general level. *See* ECF No. 41 at 14. Consistent with the allegations of the Complaint and the many cases considering this issue, the Court should hold that Plaintiffs have alleged Defendant's disclosure of their personally identifiable information. *See, e.g.*, *Frawley*, 2024 WL 3798073 at *9; *Belozerov*, 646 F. Supp. 3d at 314; *Czarnionka*, 2022 WL 17069810 at *3; *Harris*, 662 F. Supp. 3d at 1334.

### iii. *Plaintiffs allege knowing disclosures.*

Finally, Defendant argues that it did not "knowingly" disclose its consumers' personally identifiable information. *See* ECF No. 41 at 15. Defendant's argument on this point is limited to two sentences and cites no authority. Plaintiffs allege that Defendant knowingly disclosed their personally identifiable information throughout the Complaint.[10] These allegations are more than enough to meet the scienter prong of a VPPA claim. *See, e.g.*, *Czarnionka,* 2022 WL 17069810 at *3 (finding that plaintiffs adequately alleged the scienter element of a VPPA claim); *Lebakken*, 640 F. Supp. 3d at 1342-43 (same); *Frawley*, 2024 WL 3798073 at *9 (same); *Li,* 2023 WL 7280519, at *4 (same); *Feldman*, 659 F. Supp. 3d at 1021-1022 (same); *Harris*, 662 F. Supp. 3d at 1336 (same); *Belozerov*, 646 F. Supp. 3d at 315 (same).

### C. *The VPPA does not violate the First Amendment.*

No court has ever held that the VPPA violates the First Amendment. In fact, the VPPA *protects* First Amendment interests, as courts routinely find, and Congress expressly recognized

---

[10] *See, e.g.*, ECF No. 20, ¶ 8 ("Shout's practice of intentionally disclosing its digital subscribers' PII to Facebook, Zigpoll, and any other unauthorized third parties . . . ."); ¶ 38 ("In designing its websites, Shout chose to install and configure certain code, referred to as the Facebook Pixel and the Zigpoll Widget, thus making the knowing choice to collect its users' Personally Identifiable Information and disclose that information to Facebook."); ¶¶ 65-66 (alleging Defendant acted "knowingly").

when adopting the legislation. *See, e.g.*, S. Rep. 599 at 4 (1988) ("Protecting an individual's choice of books and films is a second pillar of intellectual freedom under the first amendment.").

> i.   Courts have universally rejected First Amendment challenges to the VPPA.

 Federal district courts are in accord that the VPPA does not violate the First Amendment. In *Saunders*, for example, the court expressly rejected a First Amendment challenge to the VPPA. 711 F. Supp. 3d at 33. The court found that the complaint's alleged disclosures constituted commercial speech and were subject to intermediate scrutiny. *Id*. Applying the intermediate scrutiny framework, it found that the VPPA does not violate the First Amendment. *Id*.

Similarly, in *Stark v. Patreon, Inc.*, the court rejected the defendant's First Amendment argument. 656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023). It similarly found that the disclosures alleged by the plaintiffs concerning information shared with Meta via the Meta Pixel constituted commercial speech. *See id*. at 1033-34. It concluded that "the statute's regulation of commercial disclosures similar to those at issue in this case do not support Patreon's contention that the VPPA violates the First Amendment." *Id*. at 1031.

Three district court opinions have rejected First Amendment challenges to the Michigan Preservation of Personal Privacy Act (the "MPPPA"), Mich. Compl. Laws § 445.1711, a statute which significantly parallels the VPPA. In *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst I*"), the court held that the MPPPA regulated commercial speech, applied intermediate scrutiny, and rejected both facial and as-applied First Amendment challenges. *Id*. at 447-450. Similarly, in *Boelter v. Advance Magazine Publishers Inc.*, the court found that the MPPPA regulated commercial speech and survived an as-applied First Amendment challenge under intermediate scrutiny. 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016). Finally, the *Hearst* court reaffirmed its motion to dismiss ruling in a subsequent decision addressing summary judgment. *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst*

*II*"), 269 F. Supp. 3d 172, 197–98 (S.D.N.Y. 2017).[11] Put simply, holding companies accountable for violations of consumers' intellectual privacy does not violate the First Amendment.

> ii.    *Intermediate scrutiny applies because the VPPA regulates commercial speech.*

Restrictions on commercial speech are subject to intermediate scrutiny. *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995). This means that if the commercial speech is not misleading and concerns lawful activity, it may be regulated if the government: (1) "assert[s] a substantial interest in support of its regulation"; (2) "demonstrate[s] that the restriction on commercial speech directly and materially advances that interest"; and (3) the regulation is "narrowly drawn." *Id.* (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564-565 (1980)). Commercial speech is an exception to the general rule that content-based regulations receive strict scrutiny. *See, e.g.*, *R J Reynolds Tobacco Co. v. Food & Drug Admin.*, 96 F.4th 863, 876 (5th Cir. 2024).

The VPPA provisions challenged by Defendant concern commercial speech. The Complaint alleges that Defendant disclosed personally identifiable information to Meta "so Shout can monetize and target advertisements to potential customers." ECF No. 20, ¶ 39. It further alleges that Defendant "profits from its unauthorized disclosure of its consumers PII to Facebook and Zigpoll." *Id.* at ¶ 7. There is no allegation that Defendant made any prohibited disclosures for any purpose other than improving its advertising efforts and maximizing its revenues.

Courts have universally held that similar disclosures constitute commercial speech. In

---

[11] Several other authorities have taken the position that the VPPA is constitutional. *See Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020); *Walsh v. California Cinema Invs. LLC*, No. 2:23-CV-09608-ODW (AJRX), 2024 WL 3593569, at *1 (C.D. Cal. July 29, 2024) (noting intervention of the United States to defend the constitutionality of the VPPA*); Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 945 (D. Neb. 2023) (same); *Stark*, 656 F. Supp. 3d at 1021 (same).

18

*Saunders*, the court wrote that it could "conceive of no legitimate non-commercial First Amendment interest of Hearst that its exploitation of plaintiffs' PII serves." 711 F. Supp. 3d at 33. In *Stark*, the court held that "Patreon's alleged speech at issue is commercial—as is most similar speech governed by the VPPA in the context of corporate data collection and analysis." 656 F. Supp. 3d at 1034. *See also Hearst I*, 192 F. Supp. 3d at 445 (observing that "businesses' increasing ability to profit from the collection and sale of data supports the conclusion that disclosing consumer information is—primarily, if not entirely—an economic act."); *see also Boelter*, 210 F. Supp. 3d at 598 (similar); *Hearst II*, 269 F. Supp. 3d at 197 (similar). Since the VPPA restrictions challenged by Defendant regulate commercial speech, the First Amendment challenge is subject to intermediate scrutiny.

> ### iii. *The VPPA survives intermediate scrutiny.*

The VPPA's restrictions on disclosures of personally identifiable information survive intermediate scrutiny. That is because the VPPA is narrowly drawn to directly and materially advance a substantial interest in personal privacy. *See Central Hudson*, 447 U.S. at 564-565. First, consumers' right to privacy is a substantial government interest. *See, e.g.*, *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818 (D.C. Cir. 2001) (expressing "no doubt" that the state's interest in protecting "the consumer's right to privacy . . . is substantial"). This is the exact interest that Congress intended to protect in adopting the VPPA. *See* S. Rep. 100–599, at *5 (noting Senator Leahy's remarks that "[i]t is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.").

Second, the VPPA directly and materially advances consumers' privacy interests. The VPPA prohibits the disclosure of consumers' personally identifiable information regarding audio-visual materials they request or obtain. *See* 18 U.S.C. § 2710(b); *see also Saunders*, 711 F. Supp.

19

3d at 33 (finding the VPPA "directly and materially advances" personal privacy).

Third, the VPPA is narrowly drawn. This only requires the statute to be a "reasonable" means of accomplishing the government's goal, and that its scope be "in proportion to the interests served." *Fox*, 492 U.S. at 480. Such is the case here, where the law limits the dissemination of only the type of information about which the government is concerned, and narrowly targets those likely to possess that information. *See Hearst I*, 192 F. Supp. 3d at 449; *Saunders*, 711 F. Supp. 3d at 33 ("the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers.").

Defendant cites no case finding the VPPA unconstitutional. Instead, it relies upon an analogy to *Sorrel v. IMS Health Inc*., 564 U.S. 552, 564 (2011); *See* ECF No. 41 at 15-17. But that analogy is seriously misplaced, as the Southern District of New York has explained. Regarding *Sorrell*, that court wrote "the Supreme Court's decision supports the conclusion that the [M]PPPA is comparatively well-crafted." *Advance Mag. Publishers*, 210 F. Supp. 3d 579, 601 (S.D.N.Y. 2016). *See also Hearst I*, 192 F. Supp. 3d at 450 (distinguishing the law in *Sorrell* from the MPPPA).[12] Given the substantive similarities between he MPPPA and the VPPA, the same analysis applies here. Rather than infringe upon the First Amendment, Congress understood that the VPPA would protect the interests and values that the First Amendment embodies.

## CONCLUSION

For the forgoing reasons, Defendant's Motion should be denied. In the event that the Court grants the Motion, Plaintiffs request leave to amend.

---

[12] Further, the VPPA is not "underinclusive" because, like the MPPPA, it "only permits disclosure based on narrow exceptions that still provide some measure of privacy protection." *Advance Mag. Publishers*, 210 F. Supp. 3d at 601. The statutory exceptions in the VPPA essentially mirror those in the MPPPA. *Compare id*. (listing the MPPPA exceptions) *with* 18 U.S.C. § 2710(b)(2) (listing the VPPA exceptions). Both the MPPPA and the VPPA's exceptions embody the approach endorsed in *Sorrell* of "allowing the information's sale or disclosure in only a few narrow and well-justified circumstances." 564 U.S. at 573.

Date: March 28, 2025

Respectfully submitted,

/s/ *Frank S. Hedin*

Frank S. Hedin (*pro hac vice*)
HEDIN LLP
1395 Brickell Ave, Suite 1140
Miami, FL 33131
Telephone: (305) 357-2107
fhedin@hedinllp.com

Anthony G. Simon (6209056)
Jeremiah W. Nixon (6319401)
THE SIMON LAW FIRM, P.C.
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com

*Attorneys for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 28, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

<em>/s/ Frank S. Hedin</em>