IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) ) No.: 1:24-cv-06426 ) |
| v. | ) ) Hon. Thomas M. Durkin |
| SHOUT! FACTORY, LLC, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Joel Griswold (6277574)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
jcgriswold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Defendant*
Shout! Factory, LLC

**TABLE OF CONTENTS**

**Page**

I. The Court Should Dismiss Plaintiffs' Claim Pursuant to Rule 12(b)(1). ..........................1

    A. Plaintiffs Have Not Alleged Publication.................................................................1

    B. Claims Involving Zigpoll Fail For Additional Reasons..........................................4

II. Alternatively, Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted. .......4

    A. Plaintiffs Fail to Allege Actual Damages. ...............................................................4

    B. Plaintiffs Do Not—And Cannot—Allege That Defendant Knowingly Disclosed PII In Violation Of The VPPA With Respect to Facebook. ..................6

        1. The FID Is Not PII. .....................................................................................6

        2. Plaintiffs Allege Their Own Browser Disclosed the Information. ..............7

        3. Plaintiffs Have Not Alleged A "Knowing" Disclosure. ..............................7

    C. The VPPA Violates The First Amendment. ............................................................7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Cahill*,
   598 F.3d 79 (2d Cir. 2010) ......................................................................................................9

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
   282 F. Supp. 3d 1043 (N.D. Ill. 2017) .....................................................................................7

*Barclift v. K'ystone Credit Servs., LLC*,
   93 F.4th 136 (3d Cir. 2024) .....................................................................................................3

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   591 U.S. 610 (2020) ................................................................................................................8

*Boehner v. McDermott*,
   484 F.3d 573 (D.C. Cir. 2007) ..............................................................................................10

*Boelter v. Hearst Commc'ns, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................................................................10

*Brown v. Entm't Merchants Ass'n*,
   564 U.S. 786 (2011) ................................................................................................................9

*Busse v. Motorola, Inc.*,
   351 Ill. App.3d 67 (2004) ........................................................................................................3

*Dahlstrom v. Sun-Times Media, LLC*,
   777 F.3d 937 (7th Cir. 2015) ..................................................................................................8

*Doe v. Chao*,
   540 U.S. 614 (2004) ................................................................................................................5

*Edenfield v. Fane*,
   507 U.S. 761 (1993) ................................................................................................................9

*Fanin v. U.S. Dep't of Veterans Affairs*,
   572 F.3d 868 (11th Cir. 2009) ................................................................................................5

*Fernandez v. RentGrow, Inc.*,
   116 F.4th 288 (4th Cir. 2024) .................................................................................................3

*Florence v. Ord. Express, Inc.*,
   674 F. Supp. 3d 472 (N.D. Ill. 2023) ......................................................................................1

*Florida Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)...............................................................................................................8

*FTC Credit Bureau Ctr., LLC*,
    937 F.3d 764 (7th Cir. 2019) ...............................................................................................10

*Gadelhak v. AT&T Servs., Inc.*,
    950 F.3d 458 (7th Cir. 2020) .................................................................................................2

*Gardner v. Me-TV Nat'l Ltd. P'ship*,
    2025 WL 942835 (7th Cir. Mar. 28, 2025).............................................................................1

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    48 F.4th 1236 (11th Cir. 2022) ..............................................................................................3

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) .............................................................................................10

*Kehoe v. Fid. Fed. Bank & Tr.*,
    421 F.3d 1209 (11th Cir. 2005) .............................................................................................6

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936)...............................................................................................................4

*Nabozny v. Optio Sols. LLC*,
    84 F.4th 731 (7th Cir. 2023) .........................................................................................1, 2, 3

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)...................................................................................................6

*Pac. Frontier v. Pleasant Grove City*,
    414 F.3d 1221 (10th Cir. 2005) .............................................................................................9

*Persinger v. Sw. Credit Sys., L.P.*,
    20 F.4th 1184 (7th Cir. 2021) ................................................................................................2

*Peterson v. Learfield Commc'ns, LLC*,
    705 F. Supp. 3d 937 (D. Neb. 2023)....................................................................................10

*R J Reynolds Tobacco Co. v. FDA*,
    96 F.4th 863 (5th Cir.), *cert. denied* 145 S. Ct. 592 (2024)........................................................8

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)...............................................................................................................8

*Retired Chicago Police Ass'n v. City of Chicago*,
    76 F.3d 856 (7th Cir. 1996) ...................................................................................................4

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ...........................................................................3, 4

*Salazar v. Paramount Glob.*,
   No. 23-5748, 2025 WL 1000139 (6th Cir. Apr. 3, 2025) ...........................................3

*Schiller v. Mitchell*,
   357 Ill. App.3d 435 (2005) ...........................................................................3

*Shields v. Prof. Bureau of Collections*,
   55 F.4th 823 (10th Cir. 2022) ...........................................................................3

*Stark v. Patreon, Inc.*,
   656 F. Supp. 3d 1018 (N.D. Cal. 2023) .....................................................8, 10

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...........................................................................1

*U.S. W., Inc. v. F.C.C.*,
   182 F.3d 1224 (10th Cir. 1999) ...........................................................................8

*United States v. Fredrickson*,
   996 F.3d 821 (7th Cir. 2021) ...........................................................................10

*Walsh v. California Cinema Invs. LLC*,
   2024 WL 3593569 (C.D. Cal. July 29, 2024) ...........................................................10

**Statutes**

18 U.S.C. § 2710(c) ...........................................................................6

18 U.S.C. § 2710(c)(2)(A) ...........................................................................5

**Other Authorities**

Restatement (Second) of Torts § 652B ...........................................................................2

I.  **The Court Should Dismiss Plaintiffs' Claim Pursuant to Rule 12(b)(1).**

   A.  **Plaintiffs Have Not Alleged Publication.**

Plaintiffs suggest analysis of injury-in-fact is unnecessary because several non-binding decisions have rejected standing challenges in VPPA cases.[1] But this Court cannot abandon its obligations under Article III and ignore the Seventh Circuit's controlling precedent in *Nabozny v. Optio Sols. LLC*: "*TransUnion* emphatically reminded us that 'under Article III, an injury in law is not an injury in fact.' As both *Spokeo* and *TransUnion* make clear, Congress's enactment of statutory obligations and a private cause of action for violations does not displace or dilute Article III limitations on our jurisdiction." 84 F.4th 731, 738 (7th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427-29 (2021)). The Supreme Court in *TransUnion* and the Seventh Circuit in *Nabozny* both emphasized that in a case which involves alleged violation of a statutorily created right, courts must closely compare the alleged violation with a harm traditionally recognized at common law to assess whether the plaintiff has standing. *See TransUnion*, 594 U.S. at 432-34; *Nabozny*, 84 F.4th at 735-38. Defendant's opening brief applied the *TransUnion* and *Nabozny* framework in explaining Plaintiffs' alleged harm is not similar to any traditionally recognized privacy tort—and Plaintiffs consequently lack Article III standing. (*See* ECF No. 41 at 2-6.)

Plaintiffs do not substantively address standing following *Nabozny* and *TransUnion*, do not analyze any Illinois case law concerning common law privacy injuries, and make no effort to compare the alleged statutory violation in this case to any traditionally recognized privacy tort. Instead, they assert, with no analysis, that "VPPA privacy harms closely relate to the torts of intrusion upon seclusion, disclosure of private facts, and the invasion of privacy harm generally."

---

[1] *Florence v. Ord. Express, Inc.*, 674 F. Supp. 3d 472 (N.D. Ill. 2023), the only standing case Plaintiff cites from this district, is not a VPPA case and involved cybercriminals' theft and sale of plaintiffs' SSNs, driver's licenses, and tax IDs. The Seventh Circuit's recent opinion addressing the "consumer" element of a VPPA claim in *Gardner v. Me-TV Nat'l Ltd. P'ship*, 2025 WL 942835 (7th Cir. Mar. 28, 2025) did not involve a standing challenge, and the court consequently did not address standing.

(ECF No. 47 at 6.) But *Nabozny* expressly rejected the idea that a plaintiff can "generically analogize[] her alleged injury to a tortious invasion of privacy" and made clear that a fulsome comparison of the alleged violation to a traditionally recognized common law privacy tort is necessary. *Nabozny*, 84 F.4th at 735-38. Plaintiffs are the persons that bear the burden of establishing standing, and their failure to engage in *any* substantive analysis as required by *Nabozny* precludes them from meeting their burden here. They do not respond to Defendant's argument (and thereby concede the point) that the alleged sharing of information here does not constitute "publication" at common law. Instead, they state that publication is not necessary. (ECF No. 47 at 7 ("There is no requirement for additional publication...")). But that position directly contradicts controlling authority in *Nabozny*, which closely analyzed publication at common law.

Moreover, to the extent Plaintiff's passing references to intrusion upon seclusion are given any credence despite their failure to analyze that tort, intrusion upon seclusion traditionally requires an intentional intrusion "upon the solitude or seclusion of another or his private affairs or concerns…if the intrusion would be highly offensive to a reasonable person." Restatement 2d Torts §652B. The Seventh Circuit has recognized an analogy to intrusion on seclusion where the defendant unlawfully obtained information from the plaintiff's credit file without authorization, *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1191–93 (7th Cir. 2021), or where the defendant unlawfully sent unwanted text messages to the plaintiff, *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020). But the conduct at issue in this case does not concern any allegedly unlawful collection of Plaintiff's video purchase information by Defendant; Plaintiff allegedly purchased videos *from Defendant*, so it is beyond dispute that Defendant lawfully possessed information about those video purchases. Nor does Plaintiff's VPPA claim turn on allegations that Defendant unlawfully sent *Plaintiff* any unwanted communications; Plaintiff's allegation is that

Defendant unlawfully shared information with *third parties* about Plaintiff's purchases. Intrusion on seclusion is not an analogous tort here because Plaintiff's claim concerns Defendant's alleged *disclosure* of information to third parties, not Defendant's *intrusion* on Plaintiff's private affairs.[2]

As the Seventh Circuit explained in *Nabozy*, the "only privacy tort[] [that] is even *potentially* relevant" when the alleged statutory violation involves sharing plaintiff's information with a third party is "the tort of publicity given to another person's private life or, as some sources phrase it, the public disclosure of private facts." *Nabozny*, 84 F.4th at 735 (emphasis in original). And "publicity" requires "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (internal quotation marks omitted). The alleged conduct here is not closely analogous for all the reasons explained in *Nabozny* and Defendant's opening brief—all of which has gone entirely unaddressed by Plaintiff. The Third, Fourth, Seventh, Tenth, and Eleventh Circuits all agree that sharing information with a single company is not sufficiently analogous to "publication" at common law to support Article III standing. *See Nabozny*, 84 F.4th at 735-38 (dismissing FDCPA case for lack of standing); *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1240 (11th Cir. 2022) (*en banc*) (same); *Shields v. Prof. Bureau of Collections*, 55 F.4th 823, 829 (10th Cir. 2022) (same); *Barclift v. K'ystone Credit Servs., LLC*, 93 F.4th 136 (3d Cir. 2024) (same); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 299-300 (4th Cir. 2024) (FCRA plaintiff lacked standing where allegedly defamatory information was transmitted to a business, but no employees of the business actually read and understood that information).[3]

---

[2] Moreover, case law concerning intrusion on seclusion has held that even "names, telephone numbers, addresses, or social security numbers," standing alone, are not "private facts," *Busse v. Motorola, Inc.*, 351 Ill. App. 3d 67 (2004), and that filming a person's "garage, driveway, side-door area, and backyard" was not "highly offensive." *Schiller v. Mitchell*, 357 Ill. App. 3d 435 (2005). Information about purchasing a video on a public website does not qualify as "private" at all, and sharing that information for marketing purposes is not "highly offensive" at common law.

[3] Only the Second and Sixth Circuits have held to the contrary, in opinions Plaintiffs do not address. *See Salazar v. Nat'l Basketball Ass'n,* 118 F.4th 533, 544 (2d Cir. 2024) (finding standing in VPPA case); *Salazar v. Paramount*

### B. Claims Involving Zigpoll Fail For Additional Reasons.

When presented with a factual attack to standing—here, the declaration of Kathy Callahan, (ECF No. 41-1)—the burden shifts to Plaintiffs to demonstrate they have standing. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996) ("Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.'") (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). Plaintiffs, however, leave the contentions in Defendant's declaration unrebutted and attempt to frame Defendant's factual challenge as a merits issue, which it is not. In the Callahan Declaration, Defendant attests Zigpoll was a tool Defendant used to collect Defendant's *own* data about its *own* customers for Defendant's *own* use; there is no disclosure at all, much less a "publication" under *Nabozny*, or conduct analogous to any other traditionally recognized privacy tort. (*See* ECF No. 41-1.) Notably, Plaintiff does not even attempt to argue that a company's collection of data about its own customers and exclusively for its own use is analogous to any privacy tort—because it plainly is not.

## II. Alternatively, Plaintiffs Fail To State A Claim Upon Which Relief Can Be Granted.

### A. Plaintiffs Fail to Allege Actual Damages.

The VPPA makes clear a plaintiff must establish actual damages to recover under the statute: "[t]he court may award actual damages but not less than liquidated damages in an amount

---

*Glob.*, No. 23-5748, 2025 WL 1000139 (6th Cir. Apr. 3, 2025) (same). In attempting to distinguish cases like *Nabozny*, the Second Circuit reasoned they involved only "disclosures—to mail vendors who then sent the information back to its owner," while the case before it involved Facebook which is "one of the world's largest companies," and "nothing in the complaint suggests that [Facebook] can't sell, disclose, or otherwise use Salazar's data for additional purposes." 118 F.4th at 542-43. But it makes no sense for the question of publication to turn on whether the data was shared with a small or large company, and there are no allegations in this case that Facebook subsequently disclosed Plaintiffs' information to the public at large. Plaintiffs' allegations are that their information was used by Defendant and Facebook to market directly to Plaintiffs, which is squarely in line with what happened in *Nabozny* (*i.e.*, the third party used the information for communications with the plaintiffs). Moreover, a petition for a writ of certiorari is pending before the Supreme Court in the Second Circuit case, and the standing issue in the Sixth Circuit was decided without the benefit of briefing because the defendant in that case did not raise the issue on appeal.

of $2,500." 18 U.S.C. § 2710(c)(2)(A). This language does not create two separate and independent avenues for recovery. Rather, it establishes that actual damages must be alleged and proven. The Supreme Court squarely addressed this issue in construing a federal statute with similar language in *Doe v. Chao*, 540 U.S. 614 (2004), where it held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627; *see also* ECF No. 41 at 9-10.

*Doe*'s reasoning applies with full force here, making clear that Plaintiffs cannot bypass the requirement to plead actual damages by simply asserting a right to other types of damages. Indeed, courts applying *Doe* have held a plaintiff must establish actual damages in order to be entitled to relief under the statute. *See, e.g.*, *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (requiring a showing of pecuniary harm to recover for Privacy Act violation). It would make no sense to allow a person that has suffered no actual damages to recover punitive damages, attorneys' fees and costs, or equitable relief—because the predicate for recovery under the VPPA is actual damages. Moreover, although there is a single reference to "appropriate injunctive relief" in Plaintiffs' prayer for relief, nowhere in their Complaint do they actually identify any injunctive relief they purported seek or any facts that could support a claim for injunctive relief. They do not allege that they intend to visit Defendant's website again, and the Facebook and Zigpoll technology giving rise to their claims is already gone. Alternatively, at a very minimum, Plaintiffs' damages claims must be dismissed even if they are permitted to seek unspecified injunctive or other relief.

The non-binding *Saunders* decision that Plaintiffs cite misapplies *Doe* and *Fanin* and does not address the Supreme Court's emphasis that its interpretation of the damages language in *Doe* turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision. Similarly, Plaintiffs' citation to the Eleventh Circuit's opinion in *Kehoe*, which addressed the meaning of a remedial provision

found in the Driver's Privacy Protection Act, is similarly unpersuasive. *See Kehoe v. Fid. Fed. Bank & Tr.*, 421 F.3d 1209, 1212-13 (11th Cir. 2005) (interpreting language providing, "(a) Cause of action.—A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court. (b) Remedies.—The court may award—(1) actual damages, but not less than liquidated damages in the amount of $2,500; . . . ."). *Kehoe* is distinguishable because, unlike the VPPA, the subject statute did not include any requirement that an individual bringing a claim be "aggrieved by any act of a person in violation of" the VPPA, 18 U.S.C. § 2710(c), but rather provides an action may be brought by anyone whose personal information was knowingly obtained, disclosed, or used in violation of the Driver's Privacy Protection Act. *Kehoe*, 421 F.3d at 1212-13. To the extent *Kehoe* and *Fanin* are in tension, *Fanin* was decided more recently and presents the better approach.

> B. **Plaintiffs Do Not—And Cannot—Allege That Defendant Knowingly Disclosed PII In Violation Of The VPPA With Respect to Facebook.**
>
>> 1. **The FID Is Not PII.**

Defendant relies on *In re Nickelodeon Consumer Priv. Litig*. and *Ellis* to argue that the FID and other static digital identifiers are not PII because they do not identify a specific person. (ECF No. 41 at 11-13.) Plaintiffs argue an FID is PII under the VPPA simply because other courts have found it to be so. (ECF No. 47 at 12-13.) However, the most basic requirement of a VPPA claim is disclosure of "the kind of information that would *readily permit an ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). But Plaintiffs' Complaint admits a person must "append[] the individual's FID to the end of "facebook.com/" to load an individual's profile and then attempt to identify that person based on whatever information is available on the profile. (ECF

No. 20, ¶ 28-29). This is not information that would readily permit an ordinary person to identify a specific individual's video-watching behavior and is, therefore, not covered by the VPPA. There is no basis in the statutory text to hold information which does not itself identify a person can somehow constitute "information which identifies a person" merely because it might theoretically be possible to use that information to launch an investigation attempting to identify a person.

### 2. Plaintiffs Allege Their Own Browser Disclosed the Information.

Plaintiffs fail to address Defendant's argument that Defendant itself did not disclose Plaintiffs' FIDs or any other personal information, as demonstrated through Figure 1 in Plaintiffs' Complaint, but to the extent any information was transmitted via a pixel, *Plaintiffs' browsers made such transmission*. (ECF No. 41 at 13-15.) Plaintiffs address none of the case law describing how cookies work, which show that Defendant itself does not disclose the FID—and therefore, any opposition to this argument is waived. *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) ("Failure to respond to an argument in a motion to dismiss permits an inference of acquiescence to the argument which acts as a waiver.")

### 3. Plaintiffs Have Not Alleged A "Knowing" Disclosure.

Plaintiffs argue they have adequately pled Defendant *knowingly* disclosed PII because "Shout chose to install and configure certain code…thus making the knowing choice to collect its users' Personally Identifiable Information and disclosure that information to Facebook." (*See, e.g.*, ECF No. 47 at 16, n.10). Yet Plaintiffs do not contest Defendant's argument that Defendant has no way to *know* whether Plaintiff—or any users—had FIDs, much less what those FIDs were, or whether Plaintiffs set their browsers to allow Facebook cookies. (ECF No. 47 at 15.)

### C. The VPPA Violates The First Amendment.

Defendant's opening brief (at 15–20) demonstrated the VPPA imposes severe speech restrictions not justified under either strict or intermediate scrutiny. Plaintiffs admit heightened

scrutiny applies, and their perfunctory efforts to satisfy their burden to justify the VPPA fall short of the mark. Opp. 16–20. Plaintiffs acknowledge (at 18–19) heightened scrutiny under the First Amendment applies, but they do not adequately support their invocation of intermediate scrutiny over strict scrutiny. Plaintiffs assert commercial-speech restrictions "are subject to intermediate scrutiny," Opp. 18, but they do not even cite recent Supreme Court cases applying strict scrutiny to content-based speech regulations. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618–19 (2020); *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 172 (2015). Both decisions involved commercial speech: *American Association of Political Consultants* involved a ban on robocalls to cell phones, 591 U.S. at 816, and *Reed* involved sign advertising, 576 U.S. at 165–71. These decisions make clear "*content-based*" distinctions "are subject to strict scrutiny" and governments have "ample content-neutral options available to resolve problems" they attempt to resolve with content-based restrictions. *Reed*, 576 U.S. 172–73. As the Seventh Circuit has explained, "[t]he appropriate standard of review for such a regulation hinges on whether the regulation is content based, which requires us to apply strict scrutiny, or content neutral, which demands only an intermediate level of scrutiny." *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 949 (7th Cir. 2015). Because the VPPA is content-based, as Plaintiffs' cited authority acknowledges, *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1031 (N.D. Cal. 2023), strict scrutiny applies.[4] Plaintiffs make no argument that the VPPA can survive strict scrutiny.

Plaintiffs' arguments under intermediate scrutiny are also unconvincing. Their sweeping assertion that "privacy interests" justify the VPPA are precisely the type of "broad" assertion that does not work. *U.S. W., Inc. v. F.C.C.*, 182 F.3d 1224, 1235 (10th Cir. 1999). While Plaintiffs

---

[4] *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995), the authority Plaintiffs cite (at 18), did not address whether the restriction at issue was content-based and thus is uninformative. Plaintiffs also cite *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863 (5th Cir.), *cert. denied* 145 S. Ct. 592 (2024), which addressed "government-*compelled*" speech in a framework that no one contends is applicable here. *Id.* at 876; *see also id.* at 876–86.

contend "the VPPA *protects* First Amendment interests," Opp. 16, they have no response to Defendant's point (at 18) that the First Amendment constrains state action whereas the VPPA constrains private speech—and thus *invades* rather than *protects* First Amendment interests. Plaintiffs also fail to respond to Defendants' observation that no meaningful evidence before Congress justified the VPPA's speech restrictions: the First Amendment cannot be satisfied with only two referenced incidents resulting in no cognizable harm. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 n.12 (10th Cir. 2005).

In addition, Plaintiffs' do not meaningfully attempt to explain how the VPPA is properly tailored when it protects only privacy interests in recorded videos but not books, magazines, music, and pictures. Mot. 19. Plaintiffs' footnote argument on under-inclusivity merely asserts the VPPA's "exceptions" are narrow. Opp. 20 n.12. But the VPPA is not principally underinclusive because of the exceptions it creates from its speech ban but rather because the ban accomplishes so little. The VPPA does next to nothing to protect Americans from disclosures about activities that may expose them to ridicule because most of that activity occurs through engagement with pictures, books, magazines, newspapers, online subscriptions, texts, blogs, letters, and other materials beyond the VPPA's ambit. A consumer who watches a video version of a book receives full protection under the VPPA, but one who reads the book itself receives nothing. The statute singles out some content providers for disfavored treatment and relieves similarly situated content providers from the same burdens. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011). Plaintiffs simply do not address this point.

Rather than engage with the concepts and binding precedent, Plaintiffs ask the Court to follow decisions they claim hold "that the VPPA does not violate the First Amendment." Opp. 17.

But the Court's role is not "merely to count noses. The parties are entitled to [its] independent judgment." *FTC Credit Bureau Ctr., LLC*, 937 F.3d 764, 785 (7th Cir. 2019) (quotation marks omitted). And Plaintiffs overstate the authority they cite. Three decisions addressed the Michigan Preservation of Personal Privacy Act, which prohibits disclosures—not only about videos—but also about "retail, renting, or lending books or other written materials, sound recordings, or video recordings." *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) (quoting the statute). The tailoring inquiry is therefore fundamentally different from the inquiry in this case, *see id.* at 449, and the Michigan legislature appears to have done more than Congress to justify the statute. *See id.* at 447–48. Other decisions Plaintiffs cite, Opp. 18 n.11, only referenced the constitutionality of the VPPA in brief dictum, *see Boehner v. McDermott*, 484 F.3d 573, 578 n.2 (D.C. Cir. 2007); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1124 (9th Cir. 2020), which Plaintiffs' own cited authority recognizes is not binding even within those circuits or even "persuasive as to this issue that they addressed only in passing," *Stark*, 656 F. Supp. 3d at 1028. Two other decisions did not address constitutional issues because they found no claim stated under the VPPA. *Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 963 (D. Neb. 2023); *Walsh v. California Cinema Invs. LLC*, 2024 WL 3593569, at *7 (C.D. Cal. July 29, 2024).

The remaining case, *Stark*, did not hold "the VPPA does not violate the First Amendment." Opp. 17. *Stark* punted the question until after "a factual record" was developed. 656 F. Supp. at 1038. This approach is unpersuasive, at least here, because it is a mystery what "factual record" would bear on whether the VPPA is properly tailored. The challenge presents a constitutional question that is a pure matter of law. *United States v. Fredrickson*, 996 F.3d 821, 823 (7th Cir. 2021). Moreover, Plaintiffs have not asked for discovery but rather a holding *now* that the VPPA is constitutional—which neither *Stark* nor their other authority supports.

- 11 -

Dated: April 11, 2025            Respectfully submitted,

                                                   BAKER & HOSTETLER LLP

                                                   By:   */s/ Bonnie Keane DelGobbo*
                                                             Joel C. Griswold (6277574)
                                                              Bonnie Keane DelGobbo (6309394)
                                                              Katharine H. Walton (6339805)
                                                              **BAKER & HOSTETLER LLP**
                                                              One North Wacker Drive, Suite 3700
                                                              Chicago, IL  60606-2859
                                                              Telephone:    312.416.6200
                                                              Facsimile:     312.416.6201
                                                              jcgrisold@bakerlaw.com
                                                              bdelgobbo@bakerlaw.com
                                                              kwalton@bakerlaw.com

                                                   *Attorneys for Shout! Factory, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record.

*/s/ Bonnie Keane DelGobbo*