**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated, ) ) ) ) ) ) Plaintiff, ) ) v. ) ) SHOUT! FACTORY, LLC, ) ) Defendant. ) ) | No.: 1:24-cv-06426 <br><br> Hon. Thomas M. Durkin |

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Shout! Factory, LLC ("Defendant"), by and through its undersigned counsel, hereby gives notice of the Opinion and Order in *Solomon v. Flipps Media, Inc.*, No. 23-7597-cv (2d Cir. May 1, 2025) (attached hereto as Exhibit 1) which supports the arguments Defendant makes in its pending Motion to Dismiss (ECF No. 40, 41, 41-1, 52) and which was issued after briefing on the Motion to Dismiss closed.

The Second Circuit, in a unanimous opinion, affirmed the dismissal of the Plaintiff's VPPA claim, holding that the data transmitted to Facebook, plaintiff's Facebook ID and HTML code containing references to a video title, did not fall within the scope of personally identifiable information under the VPPA. In affirming the dismissal, the Second Circuit held that:

> "[B]ased on the words of the statute, the specific context in which the language is used, and the broader context of the statute as a whole, we conclude that 'personally identifiable information' encompasses information that would allow an ordinary person to identify a consumer's video-watching habits, ***but not information that only a sophisticated technology company could use to do so*** . . . [T]he specific context in which those words are used suggests that the definition encompasses information that would permit an ordinary person to identify a specific individual's video-watching behavior, as opposed to information that only a technologically

> sophisticated third party could use to identify specific consumers. The VPPA imposes liability on a 'video tape service provider' that '*knowingly* discloses' a consumer's information to a third party. 'In other words, the statute views disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses, ***not to what the recipient of that information decides to do with it.' It does not make sense that a video tape service provider's liability would turn on circumstances outside of its control and the level of sophistication of the third party***. The ordinary person standard is a more suitable framework to determine what constitutes personally identifiable information because it 'better informs video service providers of their obligations under the VPPA,' while not impermissibly broadening its scope to include the disclosure of technological data to sophisticated third parties."

Ex. 1 at 25-27 (emphasis added) (internal citations omitted).

Analyzing the allegations concerning transmission of information to Facebook, including a screenshot of an HTML transmission in the complaint, the Second Circuit held:

> "The words of the [video] title, however, are interspersed with many characters, numbers, and letters. It is implausible that an ordinary person would look at the phrase 'title%22%3A%22-%E2%96%B7%20The%20Roast%20of%20Ric%20Flair' . . . and understand it to be a video title . . . Nor does the Complaint plausibly allege that an ordinary person could identify Solomon through her FID . . . [T]he FID would be just one phrase embedded in many other lines of code . . . [W]hat an individual would see is, for example, a phrase such as 'c_user=123456' or 'c_user=00000000.' Although a section of the code in Box A does state "[h]ost: www.facebook.com," it is not plausible that an ordinary person, without the annotation of Box B, would see the "c_user" phrase on FITE's servers and conclude that the phrase was a person's FID. ***Notably, the Complaint lacks any details about how an ordinary person might access the information on the Pixel's PageView. But even assuming, arguendo, that an ordinary person could somehow gain access to the Pixel's PageView, the Complaint is also devoid of any details about how an ordinary person would use an FID to identify Solomon***. The Complaint merely states that entering 'facebook.com/[Solomon's FID]' into any web browser would result in Solomon's personal Facebook profile, and that '[t]his basic method of accessing a person's Facebook profile is generally and widely known among the public.' ***Accordingly, we are not persuaded that an FID is 'vastly different' from the unique device identifiers in Nickelodeon, or the Roku device serial numbers in Eichenberger.***"

*Id.* at 31-33 (emphasis added) (internal citations omitted).


- 3 -

Dated: May 2, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Katharine H. Walton*
Joel C. Griswold (627757)
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton (6339805)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL  60606-2859
Telephone: 312.416.6200
Facsimile: 312.416.6201
jcgrisold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Shout! Factory, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record.

*/s/ Katharine H. Walton*