**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SAM WELBEL, MICHAEL ARCHER, and DYLAN MACALUSO, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

SHOUT! FACTORY, LLC,

*Defendant*.

Case No. 1:24-cv-06426

Hon. Thomas M. Durkin

**RESPONSE IN OPPOSITION TO UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE VIDEO PRIVACY PROTECTION ACT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. The VPPA is subject to strict scrutiny ........ 2

II. The Government's asserted interests are insufficient to save the VPPA ........ 4

III. The VPPA is insufficiently tailored under any level of First Amendment scrutiny ........ 7

A. The VPPA is unconstitutionally underinclusive ........ 7

B. The VPPA fails to "directly advance" the government's proffered interests ........ 8

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996)....9, 10

*Adarand Constructors, Inc. v. Peña*,
515 U.S. 200 (1995)....7

*Am. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021)....5

*Az. Free Enterprise Club's Freedom Club PAC v. Bennett*,
564 U.S. 721 (2011)....6

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....2, 4

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico ex rel. Pico*,
457 U.S. 853 (1982)....5

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016)....11

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)....11

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017)....11

*Brown v. Entertainment Merchants Ass'n*,
564 U.S. 786 (2011)....2

*Buckley v. Valeo*,
424 U.S. 1 (1976)....6

*Burson v. Freeman*,
504 U.S. 191 (1992)....5

*Central Hudson Gas & Elec. v. Public Svc. Comm'n*,
447 U.S. 557 (1980)....1, 8, 9

*Church of Lukumi Babalu Avye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993)....7, 8

*Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) .......... 9

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) .......... 2

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) .......... 1, 2

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 6

*Fla. Bar v. Went for It, Inc.*,
515 U.S. 618 (1995) .......... 6

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) .......... 7

*Free Speech Coal., Inc. v. Paxton*,
2025 WL 1773625 (U.S. June 27, 2025) .......... 10

*Greater New Orleans Broadcasting Ass'n, Inc. v. United States*,
527 U.S. 173 (1999) .......... 9

*IMDb, Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......... 3

*Manhattan Community Access Corp. v. Halleck*,
587 U.S. 802 (2019) .......... 4

*Mass. Coalition for the Homeless v. City of Fall River*,
158 N.E.3d 856 (Mass. 2020) .......... 8

*McCullen v. Coakley*,
573 U.S. 464 (2014) .......... 4

*Metro Lights, LLC v. City of Los Angeles*,
551 F.3d 898 (9th Cir. 2009), *cert. denied* 558 U.S. 1091 (2009) .......... 9

*NAACP v. Alabama. ex rel. Patterson*,
357 U.S. 449 (1958) .......... 5

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015) .......... 2, 3, 8

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) .......... 9

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) ....................................................................11, 12

*Smith v. Daily Mail Publishing Co.*,
443 U.S. 97 (1979)...........................................................................................................10

*Sorrell v. IMS Health, Inc.*,
564 U.S. 552 (2011)...........................................................................................................6

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D.Cal. 2023) ..............................................................................3

*Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.*,
600 U.S. 181 (2023)...........................................................................................................7

*TikTok Inc. v. Garland*
145 S. Ct. 57 (2025)...........................................................................................................3

*U.S. West, Inc. v. F.C.C.*,
182 F.3d 1224 (10th Cir. 1999) ..........................................................................................6

*United States v. Stevens*
559 U.S. 460 (2010)...........................................................................................................2

*Van Hollen v. Fed. Election Comm'n*,
811 F.3d 846 (D.C. Cir. 2016)............................................................................................5

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .....................................................................8, 10, 11

*Williams-Yulee v. Florida Bar*,
575 U.S. 433 (2015)...................................................................................................2, 4, 10

*Wooley v. Maynard*,
430 U.S. 705 (1977)...........................................................................................................5

*Yellowbear v. Lamper*,
741 F.3d 48 (10th Cir. 2014) ..........................................................................................6, 7

**Statutes**

18 U.S.C. § 2710(a) ....................................................................................................8, 10

18 U.S.C. § 2710(b)(1) .........................................................................................................2

Mich. Comp. Laws § 445.1712............................................................................................11

# INTRODUCTION

The constitutional question raised here is avoidable, as the United States correctly notes. Mem. in Supp. of the Constitutionality of the Video Privacy Prot. Act, ECF No. 55-1 ("Mem.") at 6-7. Defendant Shout! Factory, LLC ("Shout") has provided several "statutory, non-constitutional grounds" for dismissal, any one of which would "dispose[] of this case." *Id.* (referencing statutory "ordinary course of business" exemption and definition of "personally identifiable information"). If the Court is persuaded by these points, it need not reach Shout's First Amendment argument. *See* Mem. in Sup. of Def's Mot. to Dismiss, ECF No. 41 ("Def's Mem.") at 15-20; Mem. at 6 (collecting authority).

But if "constitutional avoidance principles" fail, the government concedes that the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, must be subjected to First Amendment scrutiny. Mem. at 6-8. As a content-based and speaker-targeting statute, the VPPA is subject to strict scrutiny, which it cannot survive. At a minimum, the VPPA is subject to heightened constitutional scrutiny under *Central Hudson Gas & Elec. v. Public Svc. Comm'n,* 447 U.S. 557 (1980). Mem. at 7-8. Even under that test, the government cannot demonstrate that its woefully underinclusive statute "directly advance[s]" its purported interests. *Id.* at 564

# ARGUMENT

The United States confuses "two analytically distinct grounds for challenging the constitutionality" of a speech restriction. *City of Ladue v. Gilleo,* 512 U.S. 43, 50 (1994). Laws may be infirm either because they "prohibit too much protected speech" or because they "restrict[] too little speech." *Id.* While Shout does not argue that the VPPA is overbroad, that is of no moment.

Mem. at 7, n. 3.[1] However "counterintuitive," "the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *Williams-Yulee v. Florida Bar,* 575 U.S. 433, 448 (2015); *City of Ladue,* 512 U.S. at 51 (emphasis in original).

This is true under any applicable standard of scrutiny.

I. The VPPA is subject to strict scrutiny.

The Supreme Court has been clear. "Content-based laws" regulating speech "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert,* 576 U.S. 155, 163-64 (2015); *see also Barr v. Am. Ass'n of Pol. Consultants, Inc.,* 591 U.S. 610, 621 (2020) (plurality opinion). Moreover, the Constitution "[p]rohibit[s] restrictions that distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 340 (2010). The VPPA does both. Def's Mem. at 16-17. It applies only to "video tape service providers" and no other speakers, and it prohibits disclosing "personally identifiable information concerning any consumer of such provider" and no other information. 18 U.S.C. § 2710(b)(1).

[1] For this reason, Shout need not show that there is "no set of circumstances" where "the VPPA would be valid." Mem. at 7. The government points to no precedent for this test in a First Amendment underbreadth context, and it is incorrect for two reasons. First, the United States acknowledges that the VPPA regulates speech, so even if this were an overbreadth case the controlling precedent would be *United States v. Stevens* and its companions. *See* 559 U.S. 460, 473 (2010) (relaxing facial overbreadth standard in First Amendment cases). Second and more fundamental, the Supreme Court has invalidated underinclusive laws that plainly had legitimate applications. *E.g. City of Ladue v. Gilleo,* 512 U.S. 43, 52 (law was unconstitutionally underinclusive because of exceptions to "an otherwise legitimate regulation"). Over- and underbreadth claims are subject to different tests, which is why a law can be both constitutionally overbroad *and* underinclusive. *See Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786, 805 (2011).

The government has no answer to Shout's argument that the VPPA targets particular speakers, Def's Mem. at 16, but it suggests that the VPPA is not content-based because the government's "underlying rationales" are "content-agnostic" and because "the VPPA applies to disclosure of video-viewing history without regard for the underlying idea or message expressed in the videos." Mem. at 8. But *Reed* disposes of both objections. The government's "benign motive, content neutral justification, or lack of animus" is irrelevant and "cannot transform a facially content-based law into one that is content neutral." *Reed,* 576 U.S. at 156.

Moreover, the VPPA is plainly "targeted at specific subject matter." 576 U.S. at 169. The government cites no case that has held the VPPA to be content neutral but acknowledges that at least one district court has held to the contrary. Mem at 8. Applying *Reed*, the Northern District of California found that the VPPA restricts "only the disclosure of 'personally identifiable information concerning any consumer'… it does not govern any other content the provider might wish to communicate." *Stark v. Patreon, Inc.,* 656 F. Supp. 3d 1018, 1034 (N.D.Cal. 2023) (citing *IMDb, Inc. v. Becerra,* 962 F.3d 1111, 1120 (9th Cir. 2020)). Similarly, the government's resort to *TikTok Inc. v. Garland* avails it little. Mem. at 8. The challenged law did not concern the regulation of content, but rather "impose[d] TikTok-specific prohibitions due to a foreign adversary's control over the platform." 145 S. Ct. 57, 67 (2025). That case applied the general principle that strict scrutiny is "unwarranted when the differential treatment is justified by some special characteristic of the particular [speaker] being regulated." *Id.* at 68 (brackets in original, quotation marks and citation omitted). The government identifies no such characteristic here.[2]

[2] The Court in *TikTok* went out of its way to caution that, under the unusual facts of that case—where Congress sought "to prevent[] a foreign adversary from accessing the sensitive data of 170 million U. S. TikTok users"—its "analysis must be understood to be narrowly focused in light of these circumstances." *Id.* at 68; 62-63. The government's reliance on the decision does not reflect a position of strength.

A "law that is content based is subject to strict scrutiny." *Barr,* 591 U.S. at 621 (plurality opinion) (cleaned up). Under that test, it "must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley,* 573 U.S. 464, 478 (2014). The United States asserts that the VPPA is the "rare case" that survives this standard. Mem. at 10; *Williams-Yulee v. Florida Bar,* 575 U.S. at 444. Yet it makes no effort to meet either prong, and both its asserted interest and purported tailoring fail even under lower levels of First Amendment review.

II. The Government's asserted interests are insufficient to save the VPPA.

The government concedes that the VPPA restricts lawful speech and is subject to, at a minimum, heightened constitutional review under *Central Hudson.* Mem. at 7. It invokes two interests.

First, in what would be a dangerous precedent, the United States attempts to refashion the VPPA, an acknowledged speech restriction, into a statute that affirmatively "protect[s] the First Amendment." Mem. at 10. It can summon no caselaw supporting this "censor speech to protect it" approach to First Amendment analysis. And it abandons this purportedly "substantial and compelling interest" almost immediately. *See* Mem. at 12-14 (limiting tailoring arguments to "the government's interest in protecting consumer privacy").

Fundamentally, the government's position ignores the state-action doctrine, which "distinguishes the government from individuals and private entities." *Manhattan Community Access Corp. v. Halleck,* 587 U.S. 802, 808 (2019). The First Amendment "prohibits only *governmental* abridgement of speech" not "*private* abridgement of speech." *Id.* (emphasis in original). In other words, only the government can violate the First Amendment, so it is nonsensical to speak of "protecting" a constitutional liberty from private action.

The government's own cases make this point. *NAACP v. Alabama. ex rel. Patterson,* a venerable precedent of the civil rights movement, concerned the right "to be protected from compelled disclosure *by the State.*" 357 U.S. 449, 458 (1958) (emphasis added). There, the Alabama Attorney General demanded the identities of "NAACP members [who] faced a risk of reprisals if their affiliation with the organization became know." *Am. for Prosperity Found. v. Bonta,* 594 U.S. 595, 607 (2021). That is why the Court spoke of "the effect of *compelled* disclosure" on the rights of the NAACP's members. 357 U.S. at 460 (emphasis added). The privacy at issue was privacy from a segregationist state government and its goons.

Less sweeping stakes were involved in *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico ex rel. Pico,* 457 U.S. 853 (1982), but the case nevertheless concerned official action by a school board. It is true, so far as it goes, that the plurality opinion cited by the government acknowledges the First Amendment "right to receive information and ideas," 457 U.S. at 866-67. But the three justices joining that opinion also explained, in that same paragraph, that this insight "follows ineluctably from the *sender's* First Amendment right to send" that information. *Id.* at 867 (emphasis in original). There is no suggestion that the government may limit speech by some in order to permit the receipt of speech by others. The government's other cases fare no better. *See, e.g., Wooley v. Maynard,* 430 U.S. 705, 707 (1977) (Jehovah's Witness could not be compelled to include state motto on license plate); *Burson v. Freeman,* 504 U.S. 191, 193 (1992) (government ban on campaign materials near polling place); *Van Hollen v. Fed. Election Comm'n,* 811 F.3d 846, 488 (D.C. Cir. 2016) (compelled disclosure of political contributors).

The government may not avoid constitutional scrutiny by placing First Amendment-protected speech rights on both sides of the equation. "This sort of 'beggar thy neighbor' approach to free speech—'restrict[ing] the speech of some elements of our society in order to enhance the

relative voice of others'—is 'wholly foreign to the First Amendment.'" *Az. Free Enterprise Club's Freedom Club PAC v. Bennett,* 564 U.S. 721, 741 (2011) (quoting *Buckley v. Valeo,* 424 U.S. 1, 48-49 (1976)). The government "protects the First Amendment" when it abides by it.

Second, the government claims an interest in protecting "personal privacy," Mem. at 10 (citations omitted). But, even under intermediate scrutiny, the government cannot "merely assert[] a broad interest in privacy." *U.S. West, Inc. v. F.C.C.,* 182 F.3d 1224, 1235 (10th Cir. 1999). This level of abstraction is dangerous because it makes proper tailoring impossible. "At some great height, after all, almost any state action might be said to touch on one or another of the fundamental concerns of government." *Yellowbear v. Lamper,* 741 F.3d 48, 57 (10th Cir. 2014) (Gorsuch, J.). For that reason, the government "must specify the particular notion of privacy and interest served." *U.S. West,* 182 U.S. at 1235. Aside from a general invocation of "consumer privacy," which arguably covers every commercial transaction in the country, the United States makes no effort to articulate a properly circumscribed interest. *Cf. Sorrell v. IMS Health, Inc.,* 564 U.S. 552, 557 (2011) (accepting governmental interest in "safeguard[ing] medical privacy"). Even if "[i]t can be assumed that th[is] interest [is] significant," *Sorrell* 564 U.S. at 557, for purposes of *Central Hudson,* the government's untethered interest highlights the complete lack of fit between the VPPA and the general privacy of consumers in the United States.

It is even clearer that "protecting privacy" is not a compelling interest that satisfies strict scrutiny. Mem. at 10. That is bare assertion; the United States provides no argument for this point and none of its proffered cases applied strict scrutiny. *See, e.g., Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) (finding Article III standing and affirming on statutory grounds without constitutional analysis); *Fla. Bar v. Went for It, Inc.,* 515 U.S. 618, 623 (1995) (applying "intermediate" scrutiny under *Central Hudson*). "Conclusory legalese" will not suffice; "prov[ing]

a compelling interest… isn't traditionally the sort of thing that can be satisfied by the government's bare say-so." *Yellowbear* 741 F.3d at 59.

In sum, the government's first asserted interest is no interest at all and fails under any standard of review. Its second, the protection of consumer privacy, cannot save the VPPA under strict scrutiny, as the government all but concedes by omission. Even under *Central Hudson'*s intermediate scrutiny framework, an undefined, general interest in "consumer privacy" is inadequate and only serves to highlight the VPPA's notable underbreadth.

III. The VPPA is insufficiently tailored under any level of First Amendment scrutiny.

Because the United States can identify no compelling interest undergirding the VPPA, it necessarily flunks strict scrutiny. *See, e.g., Students for Fair Admission, Inc. v. President & Fellows of Harvard Coll.,* 600 U.S. 181, 206 (2023) (*citing Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 227 (1995)) (strict scrutiny requires "daunting two-step examination"). But even under the government's preferred test, the VPPA is unconstitutional. Assuming *arguendo* that the government's purported interest in "protecting privacy" is "substantial," Mem. at 10, the statute's marked underinclusivness is fatal under *Central Hudson*'s third and fourth prongs.

A. The VPPA is unconstitutionally underinclusive.

At the outset, the VPPA plainly cannot survive strict scrutiny. Even if the asserted governmental interests were compelling, the law is badly underinclusive. Because it "leaves appreciable damage to [the] supposedly vital interest unprohibited" it "cannot be regarded as protecting an interest 'of the highest order.'" *Church of Lukumi Babalu Avye, Inc. v. City of Hialeah,* 508 U.S. 520, 547 (1993) (quoting *Florida Star v. B.J.F.,* 491 U.S. 524, 541-42 (1989) (op. of Scalia, J.)).

In *Reed,* the Court required only two paragraphs to explain that the town's asserted interests in aesthetics and traffic safety were not served by the challenged ordinance. 576 U.S. at 172. That was because the town "allow[ed] unlimited proliferation" of signs posing the same dangers as those it chose to regulate. *Id.; see also Church of Lukumi,* 508 U.S. at 546-57 (city's interests in public health and preventing cruelty to animals also implicated by unregulated hunting and animal slaughter practices); *Mass. Coalition for the Homeless v. City of Fall River,* 158 N.E.3d 856, 863 (Mass. 2020) ("soliciting donation's on one's own behalf poses no greater threat to traffic safety that engaging in the same conduct for other nonprohibited or exempted purposes").

Just so here. As Shout explained, the VPPA protects only "prerecorded" video materials—not books, magazines, still photographs, or live-streamed content—and then only from a business with "a focus" of renting videos and no other entity. Def's Mem. at 19-20 (citing 18 U.S.C. § 2710(a) & *In re Vizio, Inc., Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017)). This makes no sense if the government is truly concerned about consumer privacy writ large.

B. <u>The VPPA fails to "directly advance" the government's proffered interests</u>.

The VPPA also fails under intermediate scrutiny. In conceding that *Central Hudson*, at a minimum, applies here, the government has necessarily conceded the first prong of that decision's test: that Shout's speech "is neither misleading nor related to unlawful activity." 447 U.S. at 564

But as *Central Hudson* explained, even a limit on commercial "expression must be designed carefully to achieve the [government's] goal." 447 U.S. at 564. This may be measured in two ways. First, the "restriction must directly advance" the government's interest and cannot render "only ineffective or remote support for the government's purpose." *Id*. Second, the law must be "narrowly drawn." *Id.* at 565.

These two questions are "not entirely discrete," *Greater New Orleans Broadcasting Ass'n, Inc. v. United States,* 527 U.S. 173, 183 (1999), but the VPPA's infirmities are best understood as violating *Central Hudson*'s third prong: the requirement that a speech-limiting provision "directly advance" a significant governmental interest. 447 U.S. at 564. As the Ninth Circuit has explained, a "regulation may have exceptions that 'undermine and counteract' the interest the government claims it adopted… such a regulation cannot 'directly and materially advance its aim.'" *Metro Lights, LLC v. City of Los Angeles,* 551 F.3d 898*,* 905 (9th Cir. 2009), *cert. denied* 558 U.S. 1091 (2009) (quoting *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 489 (1995)).

The United States has advanced two interests animating this legislative approach but, as explained above, only one has any support: "protecting consumer privacy." Mem. at 12. This is a sweeping interest and the government makes no effort to limit it. This broad claim ultimately highlights the complete lack of fit between the VPPA and the protection of privacy generally.

At the outset, the government "bear[s] the burden of showing not merely that its regulation will advance its interest, but that it will do so to a material degree"—that it will "*significantly* reduce" the threatened harm to consumer privacy. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 505 (1996) (emphasis in original). For that reason, even laws that admittedly advance the government's interest have been found unconstitutional when they are "pierced by exemptions and inconsistencies." *Greater New Orleans Broadcasting Ass'n,* 527 U.S. at 190 (gambling advertising ban unconstitutional in light of exception for tribal casinos, among others); *Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 425 (1993) ("publishers' newsracks are no greater an eyesore than the newsracks permitted to remain on Cincinnati's sidewalks"); *Rubin,* 514 U.S. at 489 (invalidating federal law prohibiting disclosure of alcohol content on beer advertisements while permitting the same information on wine and spirits advertisements).

The government cannot meet this burden. The VPPA ignores a staggering range of privacy-invading practices. The law protects video purchases and rentals, but not identical information concerning still images, books, magazines, or music. 18 U.S.C. § 2710(a). It protects only prerecorded videos, and not live-streams or other real-time content *Id.* And it applies only to companies with "a focus" on selling or renting videos. *In re Vizio, Inc.,* 238 F. Supp. 3d at 1221-22. This does not "*significantly* reduce" threats to individuals' privacy nor "*significantly*" protect intellectual freedom. *44 Liquormart,* 517 U.S. at 505 (emphasis in original).

This constitutional requirement cannot be waved away with platitudes. To be sure, there is "no freestanding underinclusiveness limitation" on government action. *Williams-Yulee,* 575 U.S. at 449. But as *Williams-Yulee* itself acknowledged—in the immediately preceding sentence—differential treatment can "suggest[] that a law does not further its stated" privacy goals. *Id.* (citing *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 104-05 (1979) (decision to ban newspapers, but not electronic media, from publishing information undermined claim that statute protected youth privacy)). In cases where the Supreme Court has rejected underbreath claims, it has found the law to be "aimed squarely at the conduct most likely to undermine" the government's interest. *Id.*; *cf. Free Speech Coal., Inc. v. Paxton,* 2025 WL 1773625, at *18 (U.S. June 27, 2025) (statute requiring age verification was not underinclusive because state had a "reasonable basis for excluding sites" where "less than a third of… content is obscene to minors"). That is not the case here.

The government claims a general interest in "consumer privacy," but a ban that only reaches information about pre-recorded video purchases concerns only a tiny portion of consumer transactions. It cannot substantially advance an interest in consumer privacy generally. Even if it could, the statute is badly tailored. Mem. at 8.

The VPPA does nothing to protect audio recordings of speeches, historical events, or music.

It fails to protect live content, and is aimed at those in the business of selling or renting videos, not the many businesses that only incidentally engage in that business, like large stores and online retailers. But most obviously, if the government truly wished to permit Americans to confidently explore diverse ideas, or protect their privacy in doing so, the VPPA's lack of protection for books and other printed material is fatal. A consumer of videos, even those of the most inane or tawdry kind, is fully protected. Every written work of literature, philosophy, or history is not. A law that protects pornographic videos but not Plato, or Disney cartoons but not *The Communist Manifesto*—or a film adaptation of *Lolita* but not the book itself—does not advance the government's asserted aims.

Several decisions relied upon by the government, all in the Southern District of New York, demonstrate the point. *See* Mem. at 3-4 (citing *Boelter v. Hearst Commc'ns, Inc.,* 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Mag. Publishers Inc.,* 210 F. Supp. 3d 579 (S.D.N.Y. 2016); and *Boelter v. Hearst Commc'ns, Inc.,* 269 F. Supp. 3d 172 (S.D.N.Y. 2017)). Those cases concern the Michigan Video Rental Privacy Act, a better-tailored statute. Mich. Comp. Laws § 445.1712. Unlike the VPPA, Michigan's law reaches "written materials and sound recordings." *Id.* And the law reviewed in those cases reaches any "person, or an employee or agent of the person, engaged in the business of selling at retail, renting, or lending" those materials—an arguably broader reach than merely businesses with "a focus" of doing so. *Id.; In re Vizio, Inc.,* 238 F. Supp. 3d at 1221-22. In fact, the publishers that defended those very cases are completely unregulated under the VPPA. *See Boelter,* 192 F. Supp. 3d 427, 435 (Plaintiffs sued publisher of *Country Living* and *Good Housekeeping* magazines).

Finally, the Government relies upon *Saunders v. Hearst Television, Inc.,* which it states is the "only court to resolve a First Amendment challenge to the VPPA." Mem. at 1 (*citing* 711 F.

Supp. 3d 24 (D. Mass. 2024). But that court's analysis, a single paragraph concerning the intermediate scrutiny standard, did not even mention underinclusiveness. *Saunders,* 711 F. Supp. 3d at 33. It is no answer to the points raised here.

## CONCLUSION

For the foregoing reasons, should the Court decline to adopt Shout's other grounds for dismissal, it should find the VPPA unconstitutional under the First Amendment.

Dated: July 24, 2025

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Bonnie Keane DelGobbo*

Joel C. Griswold
Bonnie Keane DelGobbo (6309394)
Katharine H. Walton
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 3700
Chicago, IL 60606-2859
Telephone: 312.416.6200
Facsimile: 312.416.6201
jcgrisold@bakerlaw.com
bdelgobbo@bakerlaw.com
kwalton@bakerlaw.com

*Attorneys for Shout! Factory, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all Counsel of Record.

*/s/ Bonnie Keane DelGobbo*